[No. 2672.]

Rizer et al. v. The People ex rel.

1. **Cities and Towns—Elections—Office of Mayor—Filling Vacancy—Mandamus.**

Under section 4488, Mills' Ann. Stats., providing that in case a vacancy occurs in the office of mayor of a city, the city council shall order a special election as soon as practicable to fill the vacancy, it is the duty of the city council to order such special election at its first regular session after a vacancy occurs, and in case of a failure or refusal to do so mandamus will lie to compel them to order such election.

2. **Same—Election Expenses.**

Where a vacancy occurs in the office of mayor of a city, the fact that the last annual appropriation for election expenses was exhausted by the general election which followed it is no valid

reason for the city council refusing to order a special election to fill the vacancy.

**3.. Same—Demand.**

Where a city council failed to order a special election to fill a vacancy in the office of mayor as required by statute, no formal demand on the council to order such election was necessary before commencing an action of mandamus to compel them to do so.

**4. Same—Relators.**

Where a city council fails to order a special election to fill a vacancy in the office of mayor as required by statute mandamus may be instituted to compel them to do so upon the relation of private citizens.

*Error to the District Court of Pueblo County.*

Mr. M. J. GALLIGAN and Mr. F. R. McALINEY, for plaintiffs in error.

Mr. J. E. RIZER, *pro se.*

Mr. CHAS. E. GAST and Mr. MILES SAUNDERS, for defendants in error.

THOMSON, J.

At the regular election held in the city of Pueblo in April, 1901, George F. West was duly elected mayor of that city for the term commencing in that month, and ending in April, 1903. Mr. West died in December, 1901; and, on the 4th day of January, 1902, the city council appointed J. E. Rizer to temporarily act as mayor. In February, 1902, at a regular meeting of the city council, the members being all present, a resolution was offered for the calling of a special election for mayor to serve the unexpired term of Mr. West, which, upon being submitted to a vote, was rejected. Afterwards, during the same month, at a regular meeting of the council, the members being all present, another resolution providing that a special election be called to fill the vacancy was offered and defeated.

This action was brought in the name of the people of the state on the relation of a number of residents, electors and taxpayers of the city of Pueblo, to compel the city council to cause a special election to be called for the purpose of electing a mayor to fill the vacancy.

The answer to the alternative writ alleged that no demand had ever been made upon the respondents for a special election; it denied that they did not intend to call a special election; it averred that they would do so as soon as, in their opinion and discretion, such action would be practicable, but that in their opinion and judgment, and in the exercise of their discretion it had never been practicable since the death of Mr. West. It alleged further that there was no appropriation to which resort could be had for the payment of the expenses of a special election; that there was no unexpended money provided for in the annual appropriation ordinance for the fiscal year beginning April 1, 1901, which could be legally used in the payment of such expenses; that the available funds in the treasury were required by the city for other than election purposes, and that the ordering of a special election required an investigation of facts, and the exercise of judgment. The answer also raised the question of the legal capacity of the relators to bring the action.

The cause was submitted upon the alternative writ and answer. The court adjudged the answer insufficient, and awarded a peremptory writ. The respondents have brought the judgment here for review by writ of error.

The following points are made in behalf of the respondents: First—It rested in the discretion, or, at least in the judgment, of the respondents to say when the election should be ordered. Second—No appropriation for the expenses of the election had

been made, and there was no available money in the treasury which could be lawfully used for their payment.    Third—Before the respondents were legally bound to act, a demand upon them for action must be made.    Fourth—The relators, being private citizens, could not institute the proceeding in the name of the people, except upon the refusal of the attorney general to act.

1.    The following occurs in our statutes concerning municipal corporations:

"In case of the mayor's death, disability, resignation, or other vacation of his office, the city council shall order a special election as soon as practicable to fill the vacancy for the remainder of the term of office, and may appoint some qualified elector to act as mayor until such special election."—Mills' Ann. Stats., sec. 4488.

In this connection, it is the effect of the words "as soon as practicable" upon which counsel disagree.    The view of the question taken for the respondents, is thus expressed in argument: "To order a special election under that statute is not a ministerial act, but an act that requires investigation, and the exercise of discretion and judgment, to determine when it is practicable."    The proposition that mandamus does not lie to control discretion or judgment, requires no citation of authorities; so that the question is whether the language of the law leaves anything to the discretion or judgment of the council.    It is true that the statute does not require action within a specified number of days after the vacancy occurs; but if it furnishes a rule by which the time for action by the council may be ascertained, then on the principle that what may be made certain is certain, the effect is the same, and the duty to move, equally peremptory.

The word "practicable" means "feasible."    An

act is practicable of which conditions or circumstances permit the performance. The proceedings of a city council must be conducted at meetings lawfully convened, otherwise they are void. The statute empowers it to determine the time and place of holding its meetings; and when it is regularly assembled, it is prepared for the exercise of its functions, and the transaction of its lawful business. Until legally in session, it is, of course, impracticable for it to order an election to fill the vacancy; but at its first regular meeting after the vacancy occurs, there is no reason why it may not proceed to the ordering of an election. The statutory provision we have quoted seems to contemplate the making of the order first, and then the selection of some elector to act as mayor until the election shall take place. But whether the language may be so construed or not, in virtue of the powers with which the statute has clothed the city council, it may, in conformity with law, order the election at its first regular meeting after the office becomes vacant. It was at a regular meeting that Mr. Rizer was appointed to act as mayor; it was, therefore, practicable for the respondents then to make the necessary order. Subsequently, it was at a regular meeting that the first resolution was offered looking to the holding of an election, and, at that time also, the making of the order was practicable; and it was again practicable when the second resolution was presented. The law determines the question of practicability; and when the making of the order for the election became practicable, the respondents were without discretion to say, or the power of judgment to determine, that it was impracticable.—See *State v. School Directors,* 74 Mo. 21.

But for the respondents it is urged that the provision we have quoted must be construed in connec-

tion with section 1588 of Mills' Statutes, which reads as follows:

"Special elections shall be conducted and the results thereof canvassed and certified in all respects as near as practicable in like manner as general elections, except as otherwise provided; but special elections shall not be held unless when required by public good, and in no case within ninety days next preceding a general election."

It is argued that the determination of the question whether a special election to fill a vacancy caused by the death of the mayor is required by the public good, requires the exercise of judgment by the city council, and that this proceeding must fail because such exercise is not subject to judicial control. But even if that section, which occurs among statutory provisions relating solely to the election of members of the legislature, and of state and county officers, and to the manner of filling vacancies occurring in legislative, state and county offices, could be held applicable to municipal offices, it still affords no ground for counsel's contention. The argument rests upon a false assumption. However the question concerning the public good may arise, or in what manner soever it must be determined in other cases, the law has decided it in this. It is not left to the judgment of the council. The mayor is an indispensable factor in the municipal government. Every ordinance passed by the council, and every resolution or contract adopted by it involving the expenditure of money, must be submitted to the mayor, and unless it receives his approval and signature, or, unless, after he has disapproved it, it is passed or adopted by a majority of two-thirds of the members elected to the council, it has no validity.—3 Mills' Ann. Stats., sec. 4442a. All commissions, licenses and per-

mits granted by the authority of the council, must be signed by him.—2 Mills' Ann. Stats., sec. 4487.

The machinery of the municipal government could not move without the mayor. Now, the office of mayor can be filled only by the suffrages of the qualified voters of the city. The mayor can be chosen in no other way. If he die or resign, the council may appoint a qualified elector to act as mayor until the office can be again filled by election. But the appointee is not the mayor. He is simply a substitute. His appointment is a mere temporary expedient, designed to avoid a suspension or interruption of the office during the time which must elapse before a mayor can be elected. The law gives the people the right to have the office filled by a man of their own choice; and hence the provision, in case of a vacancy, of affording them as early an opportunity as is practicable to select the person who shall fill it. So far as the city is concerned, it is the theory of the law that the public good requires that the office of mayor shall be filled by a person chosen *by* the people, and not *for* them. Whether the public good requires a special election to fill a vacancy in the office of mayor, has not been left an open question.

2.   We do not think the fact that the last annual appropriation for election expenses had been practically exhausted by the general election which followed it, furnishes the respondents with any valid reason for refusing to order the election. The statute made it their imperative duty to do so as soon as practicable, and they had no alternative but to obey its requirement. See *Gibbs v. Bartlett,* 63 Calif. 117. If additional appropriation was necessary, the statute provides a method for securing it, which, for aught that appears in the answer, was entirely feasible.—2 Mills' Ann. Stats., sec. 4447. But if lack of funds would excuse the calling of a special election, it would

also relieve the council from the duty of holding a general election. There might be a failure to make an appropriation for the expenses of the general election, and so being without funds to defray those expenses, the council might refuse to take the necessary steps for holding it. Thus the incumbents might hold fast to their offices for an indefinite period. The requirements of the law cannot be thus evaded.

But even if, under other circumstances, some validity might be conceded to the excuse of want of funds, the facts and conditions disclosed by the record before us would render it unavailable in this action. The fiscal year of each city and town commences on the first day of April of each year. It is the duty of the council during the last quarter of each fiscal year to pass the annual appropriation ordinance for the ensuing year, appropriating sufficient moneys to defray the necessary expenses and liabilities of the corporation.—2 Mills' Ann. Stats., sec. 4447. The mayor died in December. The last quarter of the fiscal year commenced on the first day of January following. If the election had been ordered as the law requires, the annual appropriation ordinance could have been passed and the expenses of the election provided for before any outlay would have been required. The day for the election could have been so fixed that the appropriation would have been available. The duty of ordering the election involved the duty of doing whatever else might be requisite for the purpose of holding it.

3. These relators have no private interest peculiar to themselves, in the act or duty, the performance of which is demanded. If they had, demand and refusal would be an essential precedent condition to the relief sought. But the weight of authority is that where a duty is enjoined by law which is strictly public in its nature and concerns one individual no more

than another, no formal demand or refusal is necessary. The law constitutes the demand, and the neglect to perform, the refusal.—High Ex. Rem., § 41; *State v. Common Council,* 33 N. J. L. 110; *People v. Mount Morris,* 137 Ill. 576; *Railroad Co. v. Plumas County,* 37 Calif. 354; 19 Am. & Eng. Ency. of Law, 2 ed. 759.

4. The objection that the relators, being merely private citizens, have no right to the remedy sought in this proceeding, cannot be sustained. They are seeking the enforcement of a public right. In a case like this the people are regarded as the real party, and it is not necessary that the relator should have a special interest in the result, or that he should be a public officer. A private citizen may be a relator where public right is sought to be enforced.—*People v. Collins,* 19 Wend. 56; *Hamilton v. State,* 3 Ind. 432; *County of Pike v. State,* 11 Ill. 202; *State v. School Board,* 131 Mo. 505; High Ex. Rem. § 431. It is true that on the question who, in such case, may be a relator, the authorities are not unanimous; but the doctrine of the cases we have cited is the doctrine of our supreme court.—*Wheeler v. Irrigation Co.,* 9 Colo. 248. It is suggested, however, that the utterance in the opinion delivered in the case last cited, affecting the question of the necessary qualifications of a relator, is mere dictum, and, therefore, not authority. Until the court responsible for it rejects it as dictum we shall accept it as a statement of the law.

The judgment below awards a peremptory writ commanding the respondents to "call" a special election. Exception is taken to the phraseology. The word used in the statute is "order." The meaning of the language of the judgment cannot be very well misunderstood. It uses "call" as synonymous with "order." Nevertheless, it is not strictly accurate; and although we think the judgment good as it stands, to obviate possible technical objection it should be

amended so as to conform to the statutory phraseology.  The court is directed, without motion, so to amend it, and, as the time named in the judgment for making the order has elapsed, to further amend it by fixing another date for action by the respondents, and, as amended, it is affirmed.                *Affirmed.*