[No. 8563.]

PERKINS ET AL. V. THE PEOPLE EX REL.

1. STATUTES—*Construction*—*Must*—*May*. To construe "must" as "may" is allowable only where the context requires such construction. (109, 110.)

2. DENVER—*Charter Construed*—*Park Fund Tax*. Under sec. 104-A of the charter of Denver, the City Council is under duty to levy annually, for five years succeeding the adoption of this section, a tax of one-half mill on the dollar of the taxable values within the city. (110, 111.)

In view of the succeeding provisions of the section, expressly allowing an abatement of the tax, or its abolition, after five years, or in case of a bond issue, and the provision that the limitation in sec. 212 shall not apply to the special park levy, and considering that if the council may, in their discretion, abate the tax, they may, in the exercise of the same discretion, increase it at their pleasure, it is impossible to conceive that any discretion is reposed within the council as to the amount of this special levy. (110, 111.)

The fact that when the section in question was adopted, the practice of the assessors was to estimate property at one-third its value, in violation of their prescribed duty, is immaterial. The circumstance that the section in question has been in force for nearly three years, with no attempt to amend or repeal it, is persuasive that it accords with what the people intended in its adoption. (112.)

The fixed levy for the five years is not to maintain an existing improvement, but to create a fund for the future acquisition and improvement of lands for parks, parkways and highways, without the city limits.

And a fund is to be created whether any of it is expended within the period fixed for its creation or not.

The park commission are not required to acquire or improve any lands, within any set limit of time, but may wait until the entire fund is provided before the expenditure of any part of it. (111.)

3. CONSTITUTIONAL LAW—*Charter of Denver*. Section 104-A of the charter of Denver is not in conflict with sec. 4 of art. XX of the Constitution, and is expressly validated by the Home Rule Amendment, Const., sec. 6, art. XX (Laws 1913, 669). (114.)

4. MANDAMUS—*Where the Writ Lies*—*Discretion*. Where the municipal authorities refuse to levy a special tax expressly commanded by the charter of the municipality, mandamus is the proper remedy to compel their action. There is no abuse of discretion in the allowance of the writ in such case. (116.)

GABBERT, C. J. and BAILEY, J. dissented.

*Error to Denver District Court.* Hon. WILLIAM D. WRIGHT, Judge.

Mr. I. N. Stevens, Mr. Geo. Q. Richmond and Mr. Con K. O'Byrne, for plaintiff in error.

Mr. W. M. Malone, Mr. Warwick M. Downing, Mr. F. W. Sanborn and Mr. F. S. Tesch, for defendants in error.

Mr. Justice Scott delivered the opinion of the court.

This is an action wherein the District Court of the City and County of Denver made permanent an alternative writ of mandamus compelling the commissioners of the said city and county to make a special levy of one-half mill upon each dollar of the taxable property within said city and county for the year 1914, and for the purposes specified in sec. 104-A of the charter of the City and County of Denver, which section was adopted by the electors of the city on the 21st day of May, 1912, and is as follows:

Sec. 104-A. "The park commission, with the approval of the mayor, shall have power by purchase, gift or condemnation proceedings, to acquire and improve land for parks, parkways and roads outside the limits of the city and county of Denver, and to construct and maintain public roads, and to aid in constructing and maintaining public roads outside the limits of the city and county of Denver, for the purpose of establishing a system of roads connecting the city and county of Denver and said parks.

A franchise or franchises for the construction or maintenance of railways or street car lines or for the maintenance of other special privileges affecting any such lands so acquired may be granted as in other cases upon a vote of the taxpaying electors. As part of the annual tax levy of each year, commencing with the levy immediately following the enactment of this amendment, the council shall annually and for five years assess and collect upon each dollar of taxable property within the city and county of Denver a special levy of one-half mill, the proceeds of which shall be set aside and constitute a special park fund, to be used only for the

purposes above stated, and shall thereafter annually so assess and collect a special levy sufficient for such purposes, which levy may be less, but shall not exceed one-half mill rate as aforesaid. The limitation in sec. 212 of the charter shall not apply to the special park levy authorized hereby. Upon recommendation of the park commission the council shall submit to a vote of the qualified taxpaying electors at any regular election the question of incurring a debt and issuing bonds for any and all of the above purposes for which the special park fund as above may be used, as the same may be specified in such ordinance. The amount of said indebtedness and the form of such bonds shall in like manner be as prescribed in said ordinance submitting the question. In case of a bond issue, as aforesaid, the special park levy may be reduced below the half-mill rate as aforesaid, or, at the discretion of the council, may be abolished, except for maintenance."

Council proceeded to make a levy for the purposes contemplated by this section, and in all respects in manner and form as provided by the City Charter, but fixed the levy for such purposes at one-sixth of a mill, instead of one-half mill, as required by said section. This action is to compel the council to fix the amount of the levy at one-half mill.

It is contended by the plaintiff in error that the requirement as to the amount of the levy fixed by the said amendment to the City Charter is discretionary with the commissioners, and not mandatory, and that the word "must" as used therein should be construed to mean "may," as it relates to the making of such levy. That the commissioners have determined that there is no necessity for the amount of the levy demanded; that to so make it would be to impose a burden upon the taxpayers of the municipality, for which there is neither use nor demand.

It is true that in constitutions, statutes, city charters and ordinances the word "must" is sometimes construed as "may"; that is to say, that the act required is permissive

only; but this can be only in a case where the context seems to require such construction. It is never permissible where the provision considered in its entirety plainly indicates that it was intended to be mandatory, and in such case the word "must" is a command, and cannot be construed as permissive, but must be given that significance which it imparts.

The plain purpose of sec. 104-A was to provide for a system of mountain parks for the city, and to likewise provide the means with which to purchase and maintain them, and to also secure and maintain a system of roads connecting the city with such parks.

For this purpose the charter amendment declared that there must be an annual levy of one-half mill for a period of five years. That thereafter the levy should be only such as is sufficient for such purposes; that the same may then be less, but shall not exceed the one-half mill named for the five-year period. Then, after the period of five years, the officials are expressly given the discretion to make such levy as the necessity of the occasion may require, within the maximum limit.

It is not possible to conceive under these circumstances that discretion was intended within the fixed and limited period. It will be noticed further that it was also expressly provided that sec. 212 of the charter, which provides for a limit of total levies to fifteen mills, should not apply to the levy for such park purposes.

Again, the amendment provides that in case of an issue of bonds as authorized by said sec. 104-A the said special park levy may be reduced below the half mill, or at the discretion of the council, may be abolished, except for the purpose of maintenance.

Here is a second specific proviso in which the half mill levy may be reduced at the discretion of the council. Why should these exceptions be made if discretion and judgment was intended to be given to the council as to the amount of the levy for the five-year period. Plainly, the one-half mill

levy for that period is mandatory and compulsory. It is not for city councils or courts to question the wisdom of the people of a city in the making of improvements and in providing the manner and means of the payment therefor, if acting within their constitutional or statutory power.

Further, it is plain that this fixed levy for the five years was not to maintain an existing improvement, but to create a special fund for the establishment of a new and future improvement; to acquire and improve lands for parks, parkways and roads outside of the city limits. It is expressly provided that this fund shall be created by a fixed levy for each year for five successive years, and that "the proceeds thereof shall be set aside and shall constitute a special park fund."

This tax for the five years is not for ordinary revenue, nor for general purposes. It is a special tax for the purpose of creating a specific fund for a particular purpose. The council can have no more power to reduce the amount of the fund by reducing the amount of the levy than it can do so by reducing the number of years for which the levy is to continue. It can have no more authority to reduce the amount of the fund by the employment of either of these methods than to reduce the amount of a bond issue, if that plan had been adopted for the creation of a fund for the same purpose.

Plainly, this fund was to be created, regardless as to whether or not any of it was to be expended within the fixed period. For the park commission was not required to purchase or improve any of such lands within any particular time, and may well have waited until the entire fund was provided before making any such purchase. Then the sole purpose of the levy for the five-year period was for the creation of a fund for a future use, and not for an existing requirement or necessity.

If we were to assume that no part of this special fund so far collected has been expended, can the city council say

that for such reason there remains no longer a necessity for the levy, and that this fixed sum shall not continue to be annually collected and so set aside as provided by the charter, until the expiration of the fixed period? Would this not be a nullification of the will of the people providing for the creation of such a fund?

It is argued by counsel for the city that at the time the amendment to the charter was adopted, property in this state was assessed upon the basis of one-third its cash value, while now it is assessed at its full cash value, and hence the sum to be realized by a half mill levy is far in excess of what was contemplated. The answer to this is that the law as to assessment at the full cash value was in force many years prior to the adoption of the present city charter, whatever may have been the custom of the tax officials, and that the later statute upon that subject was enacted nearly a year prior to the adoption of sec. 104-A; it cannot, therefore, be presumed that the electors of the city did not know the law in this particular at the time. The presumption must be that they intended the very thing they did, in adopting the amendment to their charter. But if we are to concede the correctness of the contention of counsel in this respect, then we answer that the power to amend or repeal the law in this case rests with the people alone. The amendment has been in force for nearly three years and the record discloses no attempt upon the part of the people to alter or repeal it. Members of a city council must be regarded as the servants and not the guardians of the public. If the city council may exercise that judgment and discretion which will enable them in this case to reduce the levy fixed by the charter, then we must concede the power in the exercise of the same judgment and discretion to increase the levy.

However much we may appreciate the good faith of the city council in this case; the apparent desire to reduce the burden of taxation to the limit of necessity; the value of

its judgment and the wisdom of the discretion which it seeks to exercise, the fact remains that the charter amendment has denied that exercise of judgment and discretion. It may have been wholly unnecessary and unwise to have provided for so large a fund, but if so, the fault, as well as the power to correct, lies with the people.

In the case of *People ex rel. v. Commissioners*, 12 Colo. 89, 19 Pac. 892, the officers of a school district certified to the County Commissioners that a levy of fourteen mills on the property of the district was necessary to raise a special fund for the schools of the district. The County Commissioners refused to make the levy. The action was in mandamus to compel the County Commissioners to make the levy. The Commissioners answered that because of the large amount of taxable property in the district, the assessment of fourteen mills will raise a larger revenue than is necessary for the school purposes of the district. The court said:

"Notwithstanding the letter of the statute, it is manifest that in the matter of levying the taxes the Board of County Commissioners act in a mere ministerial capacity as the agents of the state, and the Board of Education of the proper district is vested with the sole discretionary power in the premises. Whether this be a wise investiture of power or not is a question for the general assembly, and not for this court."

In a case seeming to be precisely in point, *Trustees, etc., v. Jersey City*, 53 N. J. Law 62, 20 Atl. 755, the electors of the city under the authority of a statute of the state provided for a fixed levy for the purpose of establishing and maintaining a public library, it was said:

"By sec. 3 of the said Act of 1884 it is provided that if a majority of voters favor the adoption of the Act, it shall become the duty of the appropriate board of the city to appropriate and raise by tax, in the manner city taxes are assessed, levied and collected, a sum equal to one-third of a

mill on every dollar of assessable property, which sum is to be paid to the treasurer of the board of trustees of the free public library.

In Jersey City the board of finance is charged with the duty of appropriating and raising by taxation all moneys to be thus appropriated and raised. One-third of a mill on all the assessable property in said city for the year following the election amounted to $25,553.15. The board did not appropriate that sum, but did appropriate and raise $10,000.

In taking this action I think it is obvious that the board of finance was derelict in duty. The act of the legislature, sovereign over the matter of taxation, was express and mandatory in requiring this tax to be appropriated and raised. It left nothing to the judgment or discretion of the local authority. A failure to obey its mandate was a misfeasance, and a writ of mandamus may well issue to require the performance of the unperformed and neglected duty, if that duty may be now performed."

But it is insisted that even though sec. 104-A is mandatory, it is void as it relates to the fixing of the rate of levy, for the reason that it is in conflict with that part of sec. 4, art. XX, of the Constitution, which provides that "The council shall have power to fix the rate of taxation on property each year for city and county purposes."

We cannot assent to this proposition. The power to fix the rate of taxation thus granted does not include the power to determine the necessity or validity of a tax arising from a fixed levy for the construction and maintenance of public improvements directed by the people, whether in the form of bonds, the interest and principal of which must be paid by the levy of a tax, or whether from any specific levy for a stated purpose. Such a power would enable the council to nullify every act of the people providing for a public improvement. The power to fix the rate of taxation is limited to the necessities of the case, and such rate must be based upon fixed charges, levies and estimated expenses. The duty

of the council in that respect is neither legislative nor judicial, but is purely ministerial. This is made clear in this case by the method provided by the charter for establishing the basis for the rate to be fixed, fully detailed in secs. 216, 217, 218, 219 and 220 of that instrument.

The final estimate upon which the rate of taxation is based is the budget provided by sec. 218, as follows:

"The council shall meet in joint session annually between the first and third Mondays in December, and by a vote of the majority of the members thereof make a budget of the estimated amounts required to pay the expenses of conducting the public business for the next ensuing fiscal year, based on the mayor's budget, and for the other purposes required by this charter. The budget shall be prepared in such details as to the aggregate sum and the items thereof allowed to each department, office or commission, as the council shall deem advisable, subject to limitations in this charter, but the council shall not change any item in nor the total of the mayor's estimate, except upon a vote of two-thirds of each body thereof."

This rate, then, must be sufficient to include the mayor's budget and all "other purposes required by the charter." Levies fixed by the charter and the interest on bonds are "other purposes fixed by the charter."

The council can have no more authority to omit from the basis of this rate a fixed levy required by the charter than to omit therefrom the interest due and payable on the city's bonds. Clearly, sec. 4, art. XX, did not contemplate such arbitrary and autocratic power upon the part of a city council as that contended by counsel for the city.

But by what is known as the Home Rule Amendment for cities, sec. 6, art. XX, of the Constitution of the state, Session Laws 1913, p. 669, it is provided that:

"All provisions of the charters of the City and County of Denver and the cities of Pueblo, Colorado Springs and Grand Junction, * * * and all elections and electorial

votes heretofore had under and pursuant thereto are hereby ratified, confirmed and validated as of their date."

The validity of this amendment to the Constitution has been questioned and determined by this court in the case of *People v. Provost,* 55 Colo. 199, 134 Pac. 129.

Sec. 104-A of the charter of the City and County of Denver was adopted prior to said amendment to the Constitution, and was one of the provisions ratified and validated by the constitutional provision. The constitutionality of this section, therefore, may not be questioned.

There remains the further contention, best stated in the words of counsel for the city:

"If the court should conclude that even though sec. 104-A is valid, and that the rate of taxation therein fixed is not susceptible of reduction by the taxing power or authorities of the municipality, then we say it was an abuse of discretion on the part of the lower court to issue a mandatory writ, in view of the fact that the necessity therefor did not appear, and that the issuing thereof availed no purpose. We further contend that notwithstanding it may appear that the relators have a clear and undoubted legal right to this mandate, nevertheless the court, in the exercise of its discretion, should have denied the writ."

We cannot agree that there was an abuse of discretion by the court in granting the writ in this case. The recital of the provisions of sec. 104-A was a sufficient statement of necessity. The people alone had the right to, and did, determine the necessity for the levy. By the adoption of the charter amendment they created the necessity. No statement that may be made in a petition for the writ in this case can more forcefully declare the necessity than this evidence of the public determination and command. The exclusive power to make this amendment to the charter rested with the citizens of the City and County of Denver, under sec. 5 of the XXth amendment to the Constitution.

There can be no question but that mandamus is the

proper remedy in this case. *Rizer v. People,* 18 Colo. App. 40, 69 Pac. 315; *Speer v. People,* 52 Colo. 325, 122 Pac. 768.

This question, in any event, is technical as applied to the proceeding here, for if we were to determine the case on such alleged insufficiency of the pleadings, the same could be amended and the case thus delayed. In a case of such great public importance, involving as it does the delay of the levy and collection of the entire property tax upon which the city depends for its revenues, it is highly important that it shall be determined speedily on its merits.

*The judgment is affirmed.*

*En banc.*

HILL, J., concurs in the conclusion.

GABBERT, C. J., and BAILEY, J., dissent.

CHIEF JUSTICE GABBERT dissenting:

The judgment of the majority is the result of construing one clause of sec. 104-A, without regard to other provisions of the same section. It is a fundamental rule of interpretation that every law is adopted as a whole, and to ascertain the legislative intent the court must consider not isolated words and expressions, but the entire statute. It is also a rule of construction that a statute should be so construed, when possible, as to avoid absurd and unjust results. By failing to give consideration to these rules, the conclusion is reached that the provision relating to the annual levy is mandatory. The section provides that the park commission, with the approval of the mayor, shall have power to purchase and improve lands for parks, parkways and roads outside the limits of the City and County of Denver. The particular part of the section involved provides for an annual tax levy of one-half mill for the period of five years, "the proceeds of which shall be set aside, and constitute a special park fund to be used only for the pur-

poses above stated." From these provisions it is evident that the authority to purchase land for parks and to improve the same, and to construct roads outside the limits of the municipality, is vested in the commissioners, and no one else. True, the section states that an annual tax levy of one-half mill shall be made, but such levy would be a useless and unjust burden imposed upon the taxpayers, unless the municipality had made purchases or contemplated improvements for which funds from this source are required and necessary. Nowhere in the section is it made obligatory upon the municipal authorities to make purchases or improvements for the purposes named. This is left to the discretion of the commissioners. Such purchases or improvements may never be made, and to say that an annual tax of one-half mill must be levied for a purpose for which there is no necessity leads to an absurd and unjust result. So that, notwithstanding the character of the words employed relating to the tax levy, it is evident that when it is conceded, as it must be, that it is discretionary with the commissioners to purchase and improve lands for parks and roads, it must likewise be within their discretion to fix the amount of the annual tax levy for these purposes, otherwise that body is required to create a fund by the imposition of a burden upon the taxpayers for which there is no necessity. In brief, sec. 104-A leaves it to the sound discretion of the commissioners to fix the amount of the annual levy, and mandamus does not lie to control the discretionary powers with which public officials are invested.

But even if it be conceded that the levy of one-half mill is mandatory, the writ should have been denied. The issuance of the writ of mandamus is generally, almost universally, considered discretionary with the court, to which the application for such writ is addressed. It is well known that in the City and County of Denver conditions are such that tax burdens should be reduced as much as possible, and when the municipal authorities are endeavoring to relieve

the taxpayers from taxes, they should be upheld, when it appears that no one is injured by such a commendable course. Turning to the recitations in the alternative writ, we learn that there is an entire absence of any averment that the one-half mill levy is necessary for any of the purposes for which it may be levied, while from the return to the writ it appears that a levy of one-sixth of a mill has been made, which, it is avered, and not denied, will produce all the funds necessary to meet the expenditures for purchases and improvements for parks and road purposes during the ensuing fiscal year. The action is instituted by private persons "on behalf of the people," without the slightest showing that they, or "the people" they have assumed to represent, are injured by the failure of the commissioners to levy more than one-sixth of a mill, or that they, the relators, have any interest whatever in the controversy they have set on foot. The commissioners represent the taxpayers; the relators do not, except as mere volunteers. Those in authority, selected by the electors, should be permitted to administer the affairs of the municipality, and their judgment as to the rate of levy should control, instead of the judgment, or the mere wish of private individuals, in the absence of a showing of necessity or injury, when it is averred on the part of the commissioners, which stands undenied, that a levy of one-sixth of a mill is sufficient for park and road purposes, so that the issuance of the writ in these circumstances was an abuse of discretion on the part of the trial court.

The judgment of the District Court should be reversed, and the cause remanded with directions to dismiss the proceeding.

The writer is authorized to state that Mr. JUSTICE BAILEY concurs in this opinion.