[No. 8407.]

## THOMAS V. PATTERSON ET AL.

1. IRRIGATION DISTRICTS—*Bonds—Levy of Taxes to Pay.* Under the act of 1905 in relation to irrigation districts (Laws 1905, c. 113, Rev. Stat. c. 72, VIII), where the district issues two series of bonds, separate levies of taxes must be made to pay the interest and principal of each series. (550.)

2. —— *Single Levy for Two Issues—Distribution.* Where there are two issues of bonds, and a single levy of taxes, to pay "the interest which may become due on the bonds of the district" during a specified year, largely in excess of the interest due on the first issue, but not sufficient to discharge what accrues upon the two, the tax collected is to be apportioned to the holders of the two issues, in the proportion that the total amount collected bears to the total amount of the interest falling due during the year. (554.)

3. —— *Priority in Presentation for Payment,* of the coupons gives no preference. The statute makes no provision that the coupons shall be paid in the order of presentation. Every holder of bonds is entitled to a reasonable time to demand his ratable share of whatever has been collected on account thereof. (555, 556.)

Section 22 of the act is not authority for the registration of the coupons, like county warrants, if there are no funds to discharge them. (556.)

*Error to Weld District Court.* Hon. NEIL F. GRAHAM, Judge.

Messrs. THOMAS & THOMAS, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, for intervenor.

Mr. CHARLES F. TEW, for defendant in error.

Messrs. PERSHING, TITSWORTH & FRY, *Amici Curiae.*

Mr. Justice HILL delivered the opinion of the court.

An action was brought by the plaintiff in error, Thomas, against Patterson as County Treasurer of Weld county and *ex officio* treasurer of The Henrylyn Irrigation District, the object of which was to compel Patterson, as treasurer of the district, to pay certain interest coupons clipped from a first issue of bonds of the district, held by Thomas. Within a short time thereafter, the defendant in error DeRemer com-

menced a similar action against the treasurer, to compel the payment of certain interest coupons of the district, which she held, clipped from a second issue of bonds issued by the district. The plaintiff in error, Bancroft, intervened in the Thomas suit, to compel the treasurer to pay interest coupons of the first issue held by him. The cases were consolidated for trial. Judgment was in favor of DeRemer, from which Thomas and Bancroft prosecute this writ of error.

The record discloses, that The Henrylyn Irrigation District was organized under our Irrigation District Act of 1905; that on September the 1st, 1908, the district authorized an issue of bonds; that bonds of the face value of $99,000.00 of this issue were sold, and the remainder cancelled; that on February 1, 1910, a second issue of bonds was authorized by the district, of which a large number were sold; that the coupons held by Thomas and Bancroft were attached to the first issue, and those held by DeRemer, to the second; that all of these coupons were due and payable June 1, 1914; that in December 1913, the Board of County Commissioners of Weld county, by resolution, levied a tax which the resolution states was "to raise the amount of money required to pay the interest which may become due during the year 1914 on the bonds of the said district"; that this was the only levy made for that purpose for the year 1914; that when the County Treasurer opened his office the morning of June 1, 1914, representatives of all three of the owners of the coupons involved were at the door and, when opened, entered the treasurer's office, and presented to the treasurer, practically simultaneously, these coupons for payment; that the treasurer recognized the representatives of the owners of the coupons in the following order, De Remer first, Thomas second, and Bancroft third; that he refused to pay any, because of a temporary restraining order which had been issued in the Thomas suit; that the

coupons presented aggregated as follows: DeRemer, $1,080.00, Thomas, $765.00 and Bancroft $1,230.00; that the total amount in cash in the hands of the treasurer June 1, 1914, received from the tax levy to pay interest maturing on bonds in 1914 was $509.89; that the total levy to pay interest, if paid in cash, would raise the sum of $26,760.00; that the amount of interest which became due during the year 1914 upon the first issue was $5,940.00 and upon the second issue about $210,000.00.

The plaintiffs in error contend that being the holders of coupons clipped from the first issue, they are entitled to have all the interest money applied to the payment of their coupons, before the holders of coupons clipped from the second issue are entitled to receive any. Their reason for this is the proviso contained in section 15 of the 1905 act which reads:

"Provided, further, That when the money provided by any previous issue of bonds has become exhausted by expenditures herein authorized therefor, and it becomes necessary to raise additional money for such purposes, additional bonds may be issued submitting the question at special election to the qualified voters of said district, otherwise complying with the provisions of this section in respect to an original issue of such bonds; Provided, also, the lien for taxes, for the payment of the interest and principal of any bond issue, shall be a prior lien to that of any subsequent bond issue."

In order to ascertain what was intended by this proviso, it is proper to consider its history. Our first Irrigation District Act was adopted in 1901; it was taken in part from the so-called Wright law of California and the Nebraska act, but a part of it is different from either. It provides for the formation of irrigation districts for the purpose of acquiring by purchase, construction or otherwise, canals and reservoirs, etc., for the irrigation of lands therein. These

districts were to be managed by a board of directors to be elected by the people. Under certain conditions, for certain purposes, it authorized the issuance and sale of bonds, but the first act only authorized one issue, and although insufficient for the purposes intended, there was no authority for any further issue. Section 13 was amended in 1903 to provide for a second issue, by submitting it to a vote at a special election, and otherwise complying with the provisions of the act, the same as required for a first issue. The proviso concerning the prior lien of the first issue was for the first time inserted in this amendment. In 1905, the act under consideration was adopted. It repealed both the 1901 and the 1903 acts, but section 15 thereof included a similar provision for a second issue, and likewise contained the same clause that was in section 13 of the 1903 amendment concerning liens. From a careful study of the entire act, in connection with its history, and the proviso which gives a prior lien for taxes to the first issue, we are of opinion that it was intended that there should be separate levies made with which to pay the interest and principal of each issue of bonds, otherwise the language is not susceptible of enforcement by any practical method that has been pointed out or that we can think of.

It will be observed, which is material, that this proviso reads "the lien for taxes" not "the lien on taxes" as counsel would seek to have it applied. In Vol. 37 Cyc., at page 1138, it is said:

"Tax lien is statutory. A tax levied and assessed upon specific property is not a lien on that or any other property of the owner unless expressly made so by statute, and an intention to this effect must be clearly manifested in the statute, as the lien will neither be created by implication nor enlarged by construction."

This appears to be the general rule, with the exception that when, considered as a whole, there are statutes that

call for a construction which creates a lien by necessary implication without express language to that effect. Sections 17 and 22 of this act have this effect, but in order to recognize a prior lien there must be authority for a levy to become such a lien. This act recognizes this by, in substance, providing that so far as a second issue of bonds is concerned the same procedure must be gone through as is provided for the first issue. This means everything concerning them. The context thus indicates, and when the act refers, as it does in section 21, to a bond fund account of interest, principal, etc., it was as originally intended referring to one issue when there was to be only one issue; but when section 15 of the latter act provided for a second issue and provides further that the same procedure should be followed, etc., in their issuance, and all matters pertaining thereto, and then provides that the lien for taxes for the first issue shall be a prior lien, and section 17 having provided that the real property of the district shall be liable to be assessed for such payments, etc., as therein provided for, etc., then the bond fund, principal and interest language must be construed as referring to each as a separate entity; such being the case, when the taxes are paid upon any land, the lien proviso concerning it becomes immaterial, for when the taxes are paid, they must be apportioned to the funds for which they are levied.

In Vol. 37 Cyc., at page 1169, it is said:

"Full payment of the taxes due on particular property discharges the tax lien, releases the owner from liability, and invalidates any subsequent proceedings taken for the enforcement of the lien or the tax through the mistake or fault of officers."

This rule applies to all liens upon any particular piece of property, hence when the holder of a first issue of bonds makes his purchase, he is informed by statute of these provisions made concerning their payment, etc., which, in addi-

tion to commanding a levy for the full amount necessary under the provisions of section 20, calls for 15% in addition to cover deficiencies. It will be observed that section 20 states that "all taxes levied under this act are special taxes" and section 19 provides, upon account of all lands being entitled to receive the same benefit, so far as the apportionment of water is concerned, that these assessments or taxes are to be the same value per acre, or upon a flat basis, that is an equal amount per acre, in contradistinction to the usual practice in taxation matters, viz, upon cash values; and section 22 provides that the revenue laws of the state for the assessment, levying and collection of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this act, including the enforcement of penalties and forfeitures for delinquent taxes.

When the sections above cited are considered together, when applied to a district with one issue of bonds only, they are quite simple in their application. To illustrate, take a district of 10,000 acres where the amount required to meet the interest annually is $10,000.00; the amount and levy is purely a matter of calculation. There is no uncertainty anywhere. The land is all taxed for interest, $1.15 per acre; this includes 15% for delinquencies as the act requires; if all is paid the full amount of the coupons is paid, and the district has a surplus of $1,500.00; but if only half the land pays, then only a little over one-half of the amount of the interest coupons are, at that time, paid. If the same district has a second issue in amount equal to the first, the levy, for instance, instead of being $1.15 per acre is $2.30 per acre; if all pay, the interest on the second issue is likewise paid, and the district has an additional $1,500.00 to its credit. If only one-half of the land pays, then only a little over one-half of the amount of the interest coupons are paid, but the holder of the second issue of coupons, so far as his fund is concerned, is in identically the same condition as the first,

with the exception, as the lien proviso gives to the first a prior lien upon the lands which have not paid, but so far as this case is concerned it does not call for a construction of this lien proviso, that is as to how it is to be recognized or enforced; but we cannot agree with the plaintiffs in error that the holders of the coupons of the first issue should get their entire interest paid by taxes from one-half of the land which has paid all levies against it, while the holder of the coupons represented by the second issue would get nothing, but hold a lien upon the other half of the lands in the district, which has failed to pay any of the levies. The result of this position would be that the holder of the first issue of bonds would not only get the benefit of the moneys furnished by the second issue, in the completion of the property, and thereby enhance the value of the security, to-wit, the lands of the district, but would also be entitled to a prior lien upon all moneys paid in for taxes upon all the lands in the district before the holder of the second issue gets any.

The act says "the lien for taxes" not "the lien on taxes" and in order to be different liens for taxes, as heretofore stated, there must be different levies for these taxes. As stated, just how this lien proviso is to be recognized or enforced is not before us. Somewhat similar conditions pertaining to different liens for taxes have been recognized in different cases, some of which we cite, not as authority upon this question, but as referring to the subject and as recognizing a distinction between different liens for taxes for different purposes. *City and County of Denver v. Keeler,* 48 Colo. 54, 108 Pac. 998; *White v. Knowlton,* 84 Minn. 141, 86 N. W. 755; *White v. Thomas,* 91 Minn. 395, 98 N. W. 101; *Gould v. City of St. Paul,* 120 Minn. 172, 139 N. W. 293; *McCollum v. Uhl,* 128 Ind. 304, 27 N. E. 725; *Ballard v. Ross,* 38 Wash. 209, 80 Pac. 439.

The serious question which presents itself is, where two issues of bonds are outstanding with interest coming

due on both, and where one levy only is made for the purpose, and is as the resolution of the Board of County Commissioners states "to raise the amount of money required to pay the interest which may become due during the year 1914 on the bonds of the district" what presumptions of law are to be indulged in concerning this state of facts, where the levy, as here, is over four times too large to pay the interest upon the first issue, but not sufficient to pay both. Should we presume that a sufficient amount of it was intended to pay the interest on the first issue, and the remainder, in an insufficient amount, was intended for the purpose of paying interest upon the second issue, when the law concerning the amount needed for this purpose applies with equal force to both, and when the Board of County Commissioners knew the amount required for each? In such case, we are unable to appreciate wherein the presumption should be any different between them, but are of opinion that the shortage should be apportioned the same to both. To assume that the entire levy was made for the first issue would be to assume that the Board of County Commissioners acted in excess of its authority, for without the existence of the second issue the board was without authority to make a levy in the amount it did, for which reason we must assume that it was intended to have been made for the payment of both. It should be understood that the question of the validity of this levy is not at issue, and we are not passing upon that question, but are limiting our consideration to where the moneys which have been received under this levy should be applied. In such case, we are of opinion the presumption is that it was intended to apply equally to all, in proportion that the total amount of the levy bears to the total amount of the interest coupons coming due during the year. As the record stands, it discloses that the Board of County Commissioners was derelict in its duty in not making levies sufficient to pay all of

both, but, as stated, in such case we have no right to assume that they intended this neglect of duty to apply any more to one issue than the other, where the law, as here, was equally emphatic as to both, and where the holders of either issue of coupons had a remedy to compel a full levy to be made for their payment as the statute provides. *Perkins v. The People,* 59 Colo. 107, 147 Pac. 356.

The third question involved is, has any coupon holder the right to have the funds in the hands of the treasurer applied in the payment of his coupons in preference to others of the same issue due at the same time, when there is insufficient to pay all, because the one holder may present his for payment before another, or perchance may be first in line or be recognized first arbitrarily, or otherwise by the County Treasurer. The statute does not require that coupons shall be paid in the order of their presentation for payment, but to the contrary, it, in substance, provides that the funds realized from the collection of taxes levied to pay interest maturing on any issue of bonds in a specified year is for the benefit of all holders of interest coupons which can be legally paid out of such funds.

In *Jewell v. City of Superior,* 135 Fed. 19, 67 C. C. A. 623, the collection of local improvement bonds was under consideration wherein, in considering this subject, the court said:

"The fifth assignment questions the action of the trial court in limiting the amount of his recovery to his *pro rata* share of the fund to which the holders of all the bonds were entitled. This fund, derivable from the assessments, was a trust fund, pledged to the payment of all of the bonds. The right of the appellant therein was only to such portion of the fund realized as the sum of his bonds bore to the entire amount of the issue of bonds. It is true that equity favors the vigilant, not the slothful; but we think it would be a manifest perversion of equity to require a trustee to commit

a breach of trust owing to other *cestus que trustent,* by taking from other bondholders and awarding to the appellant so much of this fund as would pay his bonds in full. We know of no principle of equity which would warrant such a decree."

We think this declaration specially applicable to the facts here, as well as based upon sound reasoning, and that it would be a miscarriage of justice where two people, as in this case, like Thomas and Bancroft both holding coupons against a trust fund pledged to the payment of all such coupons, and where both, if not others, were present at the opening of the office at the time they were due, to allow the one who might first be recognized by the County Treasurer to receive any priority over the others who were there also, or who thereafter presented their coupons within a reasonable time. In such case the weight of authority is that there should be no distinction made between them, and that all have a reasonable time within which to present their coupons for payment without losing their rights. *Shelley v. St. Charles County Court,* 21 Fed. 699; *The So. Bank v. La. Nat'l Bank, et al.,* 32 La. Ann. 290; *Sibley v. Mobile,* 22 Federal Cases, 57.

The contention that because section 22 of the act makes the revenue laws of the state applicable, except as therein otherwise provided, is authority for the presentation of these coupons for payment, and if no funds, for registration, etc., the same as county warrants, is not well taken. Were this contention made concerning the warrants of the district, it would present a different question. Counsel have not called to our attention any portion of our revenue laws wherein it is provided what is to be done concerning interest coupons payable by special taxes as this act provides, when the levy authorized for that purpose, or a lesser one is made, when either proves insufficient to pay them all. In such case the only logical conclusion, which is supported by the

weight of authority, is that when coupons are presented for payment, and there is not sufficient funds in the hands of the treasurer which can be applied to the payment of all the coupons of the bond issue from which they were taken to pay them in full, that such proportion of such funds may be applied on the coupons presented as are payable out of the funds in the hands of the treasurer in the ratio they bear to the sum total of the coupons to which such funds must be applied. *Jewell v. City of Superior, supra;* 28 Cyc. 1645; *Hodge's Appeal,* 84 Pa. St. 359; *Roberts v. Denver, L. & G. R. Co.,* 8 Colo. App. 504, 46 Pac. 880; *Ketchum v. Duncan,* 96 U. S. 659, 24 L. Ed. 868; *Bank v. Arthur,* 12 Colo. App. 90, 54 Pac. 1107; Vol. 5, McQuillin on Municipal Corporations, p. 4921; *Sibley v. Mobile,* 22 Federal Cases, 57.

For the reasons stated, the judgment will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed, each party to pay its own costs in this court.

*Reversed.*

Decision *en banc.*

Chief Justice GABBERT and Mr. Justice WHITE dissent.

Chief Justice GABBERT dissenting.

I dissent from the conclusion that any funds in the hands of the County Treasurer can be applied upon the De-Remer coupons.

The act authorizing the organization of an irrigation district, after setting forth the steps necessary to authorize the issuance of bonds, provides, in the latter part of section fifteen as follows: "Provided further, That when the money provided by any previous issue of bonds has become exhausted by expenditures herein authorized therefor, and it becomes necessary to raise additional money for such purposes, additional bonds may be issued  *  *  *  Provided,

also, The lien for taxes, for the payment of the interest and principal of any bond issue, shall be a prior lien to that of any subsequent bond issue." A construction of this provision determines the relative rights of the holders of the coupons involved.

An irrigation district is empowered to issue bonds to construct or purchase reservoir sites, reservoirs, water rights, canals and ditches, by means of which the lands embraced in the district may be supplied with water for the purpose of irrigation. Anticipating that the first issue of bonds might not be sufficient to complete the work necessary to supply the required volume of water, the General Assembly wisely provided that additional bonds might be issued. In order that the relative rights of the holders of different issues should be definitely fixed the act provides, as previously quoted, that "The lien for taxes, for the payment of the interest and principal of any bond issue, shall be a prior lien to that of any subsequent bond issue." Evidently, the purpose of this provision when considered in connection with the context, is to give the bonds of the first issue, the preference over any subsequent issue, in the matter of payment. By section 17, the bonds of a district, and the interest thereon, shall be paid out of revenue derived from taxes levied on the real property in the district, subject to taxation for these purposes. By section 20, provision is made for the levy of an annual tax to provide the funds necessary to pay interest as it matures on the bonds of the district. As pointed out, there may be two or more bond issues, and when the statute in express terms gives to the first issue a lien for taxes prior to any subsequent issue, its object was to require that funds thus raised should be applied to the payment of the first issue of bonds in preference to any subsequent issue. It is, therefore, clear that the purpose of the provision under consideration was to confer upon holders of interest coupons attached to bonds of the first issue,

the right to have them paid in advance of coupons taken from any subsequent issue out of the funds derived from taxes levied to pay the interest as it matures on the bonded indebtedness of an irrigation district.

The majority opinion appears to recognize that the first issue of bonds is in some way, entitled to a priority over a second issue, but indicates that just how this lien is to be recognized or enforced is not presented. In my judgment, that is the vital question for us to determine. It appears to be suggested that there should be a separate levy for each issue. If this course should be followed, then if any force or effect is given the provision being considered, the lien for taxes levied for the benefit of the first issue must be given priority over a levy for any subsequent issue, and the situation would be precisely the same as though there had been but one levy as in the case at bar. A lien for taxes for the payment of bonds, or interest thereon, attaches to the property of the district issuing them, upon which taxes may be levied to provide a fund to discharge such bonds or interest, and when a prior lien for this purpose is given, such lien attaches to taxes levied and collected for that purpose. Consequently, unless the provision under consideration is ignored, it is immaterial whether there be one or two levies as in either event, interest coupons of the first issue would have to be given preference over the second issue.

Confessedly the funds in the hands of the treasurer are insufficient to pay the interest due on the two bond issues. The coupons in the hands of Thomas and Bancroft belong to the first issue. The statute does not require that coupons shall be paid in the order of their presentation for payment. The fund realized from the collection of taxes levied to pay interest maturing on bonds in a specified year, is for the benefit of all holders of interest coupons which can be legally paid out of such fund, so that the funds in the hands of the

treasurer, should be apportioned upon the coupons held by Thomas and Bancroft, in the proportion they bear to the sum total of the coupons of the first issue of bonds maturing June 1, 1914. None of such funds should be applied upon the DeRemer coupons.

This disposition of the case for the reasons given, would carry out the intent of the General Assembly, give full force and effect to the proviso which confers upon the first bond issue a preference over the second in the matter of payment, simplify the situation by preventing complications which would be the result of attempting to make separate levies for separate issues, and protect the rights of the holders of coupons taken from the first issue conferred by statute of which they are deprived by the majority opinion.