[No. 19101.  Department Two.  April 13, 1925.]

THE STATE OF WASHINGTON, *on the Relation of H. L. Boyd, Appellant,* v. J. MILLS, *as City Treasurer, Respondent.*[1]

MUNICIPAL CORPORATIONS (533)—LOCAL IMPROVEMENTS—BONDS—METHOD OF PAYMENT—STATUTES—CONSTRUCTION. Local improvement bonds, payable only from the special fund derived from assessments of the property benefited, under Rem. Comp. Stat., § 9407, are payable in the order of their serial number and not *pro rata,* notwithstanding maturity of all the bonds prior to the issuance of any call provided for by such section, and notwithstanding insufficiency of the fund to pay all the bonds; in view of the provision of such section, and a corresponding provision in the city ordinance and each bond itself, requiring a call of unpaid bonds, giving their serial number, whenever there is sufficient to pay the principal of one or more bonds, and providing that such bonds shall be called and paid in their numerical order.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered November 8, 1924, upon sustaining a demurrer to the petition, dismissing proceedings for a writ of mandate and for an injunction.  Affirmed.

*Wright, Froude, Allen & Hilen,* for appellant.

*O. Duncan Anderson* and *J. W. Dootson,* for respondent.

*Preston, Thorgrimson & Turner, amici curiae.*

*James R. Gates,* for Henry W. Pennock, *amicus curiae.*

HOLCOMB, J.—This is a test case to determine the manner of payment of local improvement district bonds where the entire bond issue has matured and there is not sufficient money in the fund to pay the bonds in full.

[1]Reported in 234 Pac. 1042.

The petition, as amended, alleges that relator is the owner of certain bonds of local improvement district No. 289 of Everett; that that district was duly organized and bonds duly issued against the local improvement district fund of the district on December 2, 1913, maturing December 2, 1923; that certain bonds, including relator's, are wholly unpaid. It is further alleged that there is now $677.39 in that local improvement district fund, and that respondent, as treasurer of Everett, will, unless enjoined, apply that sum to the payment in full of the bonds next in serial number, and will apply any balance of that sum, and all moneys that may hereafter be paid into the fund to the payment in serial order of outstanding bonds of the district, and that relator's bonds, bearing higher serial numbers, will receive no part of that fund. It is also alleged that relator demanded payment of respondent, and that she apply the sum of $677.39 now in the special improvement fund *pro rata* upon all unpaid bonds of district No. 289, including the bonds owned by him, which she wholly refused. It is also alleged that there is a large amount of property in local improvement district No. 289 as to which the assessments are delinquent, and that a large portion of the delinquent property is heavily encumbered with delinquent general tax and assessment liens which are prior to the lien of the assessment in that district, and that the delinquent property is not of sufficient value to secure the payment in full of all outstanding bonds in that local improvement district, and that the district and the funds are insolvent. It is alleged that relator has no other plain, speedy and adequate remedy at law, and prayed (1) that an alternative writ of mandate be issued directing respondent either to pay forthwith to relator his *pro rata* share of the sum of $677.39 or show cause why a writ should not be issued compelling

her to do so; (2) that the court issue a temporary re-straining order restraining respondent from applying the whole sum now in the fund to the payment in full of the outstanding bonds in their serial order; (3) for general relief.

An alternative writ of mandate and an order to show cause and a temporary restraining order were issued. Respondent demurred to the petition for want of sufficient evidence to warrant relief, which was sustained by the trial court, and the writs were quashed and the action dismissed.

At the hearing on the demurrer, it was stipulated that the court might consider the terms and forms of the bonds in question, and also the provisions of the general ordinance of Everett prescribing their form.

Appellant contends that, where the entire bond issue has matured and there is not sufficient money in the fund to pay the bonds in full, general principles of law and equity require such money as is in the fund to be applied *pro rata,* and that the statutory provision relied upon by respondent for the serial payment of bonds does not apply at or after maturity, but is a method only to call bonds in advance of maturity.

Appellant submits the following propositions upon which he relies:

(1) In the absence of statutory provisions requiring the application of the fund after delinquency, bondholders should share therein proportionately to their holdings.

(2) There is no statute covering this situation, as the statute relating to serial payment applies only to the manner of selecting bonds for calling prior to maturity.

(3) The particular provisions of the ordinance and the bonds in the case at bar do not change the situation.

Section 9407, Rem. Comp. Stat. [P. C. § 1042], respecting such bonds, reads:

"The city or town treasurer shall pay the interest on the bonds authorized to be issued by this act out of the respective local improvement funds from which they are payable. Whenever there shall be sufficient money in any local improvement fund against which bonds have been issued under the provisions of this act, over and above sufficient for the payment of interest on all unpaid bonds, to pay the principal of one or more bonds, the treasurer shall call in and pay such bonds; provided, that such bonds shall be called in and paid in their numerical order: provided, further, that such call shall be made by publication in the city or town official newspaper in its first publication following the delinquency of the installment of the assessment or as soon thereafter as practicable, and shall state that bonds No.—— (giving the serial number or numbers of the bonds called) will be paid on the day the next interest coupons on said bonds shall become due, and interest on said bonds shall cease upon such date."

Another provision of the law, § 9413, Rem. Comp. Stat. [P. C. § 1049], provides:

"The council of each city and town shall pass such general ordinance or ordinances as may be necessary to carry out the provisions of this act. Thereafter all proceedings relating to local improvements shall be had and conducted in accordance with this act, and the ordinances of such city or town relating to local improvements."

In conformity to this section, Everett enacted general local improvement district ordinance No. 1439, in 1912, which was the ordinance stipulated that the court below might consider, § 8 of which provides for the form of bonds in such local improvement district proceedings. That section, among other things, provides that the form of bonds shall recite that they are issued by virtue of the provisions of the act of the legislature entitled: "An Act relating to local improve-

ments in cities and towns, and repealing certain acts and parts of acts,'' approved March 17, 1911, § 52 of which reads as follows:

''Neither the holder nor owner of any bond issued under the authority of this act shall have any claim therefor against the city by which the same is issued except from the special assessment made for the improvement for which such bond was issued, but his remedy in case of non-payment shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on each bond so issued.'' Laws of 1911, p. 474.

There was also a provision of the ordinance requiring the further recital on the bond that ''the bond is payable on or before the——day of—— 19——, and subject to call by the city treasurer of said city whenever there shall be sufficient money in such local improvement district fund to pay the same, and all unpaid bonds of the series of which this bond is one, which are prior to this bond in numerical order, over and above sufficient for payment of interest on all unpaid bonds of said series.''

Pursuant to the terms of the ordinance of Everett, the bonds of local improvement district No. 289 were issued serially, numbered as required by law and ordinance, containing all the provisions required by statute and ordinance, aggregating in all 568 bonds for the principal sum of $56,723.40, each of which contained, among other things, the statement required by the ordinance that ''the bond is payable on or before the second day of December, 1923, and is subject to call by the city treasurer of the said city whenever there is sufficient money in said local improvement fund to pay the same, and all unpaid bonds of the series of which this is one, which are prior to this bond in numerical order, over and above sufficient for the payment of interest on all unpaid bonds of said series.'' The bonds

contained the further recital that call will be made in the official newspaper, etc.

Respondent contends (1), that § 9407, Rem. Comp. Stat., provides for calling and paying local improvement district bonds in numerical order after delinquency as well as before; (2) that if it should be held that the statute only provides for calling and payment of bonds in their numerical order prior to delinquency, then the statute must be deemed silent on payment after maturity, and the general local improvement district ordinances of Everett will govern; (3) the bond itself constitutes a contractual obligation between the holder thereof and Everett, and the holder is bound by its provisions for the payment of all bonds in their numerical order.

We have been favored, also, with able briefs on the part of *amici curiae,* one of which takes the position that the trust fund theory should be applied where there are not sufficient funds at the time of the maturity of the last of the bonds to pay the same in full, and the fund on hand should be applied *pro rata.* The other *amicus curiae* takes the position that, under our statute, there is no reason for resorting to the doctrine of trust. A number of cases are cited by appellant and by the friends of the court who support appellant, to sustain the position taken by him. Among others, is that of *Jewell v. Superior,* 135 Fed. 19, an action by a bondholder for an accounting with respect to a local improvement fund created by assessments. The fund was insufficient to redeem all of the bonds and the city was not generally liable for their payment. The complainant insisted that he was entitled to payment of his bonds in full, since other bondholders had taken no steps to enforce payment. The court said:

"The fifth assignment questions the action of the trial court in limiting the amount of his recovery to

his prorata share of the fund to which the holders of all bonds were entitled. This fund, derivable from the assessments, was a trust fund, pledged to the payment of all of the bonds. The right of the appellant therein was only to such portion of the fund realized as the sum of his bonds bore to the entire amount of the issue of bonds. It is true that equity favors the vigilent, not the slothful; but we think it would be a manifest perversion of equity to require a trustee to commit a breach of trust owing to other *cestuis que trustent*, by taking from other bondholders and awarding to the appellant so much of this fund as would pay his bonds in full. We know of no principle of equity which would warrant such a decree.''

This was a decision by the circuit court of appeals, seventh circuit, and a writ of certiorari was denied in the case by the supreme court, *Jewell v. Superior,* 198 U. S. 593, 45 L. Ed. 1173.

The statutes of Wisconsin, where that cause arose, are not set out so that we can compare the provisions thereof with the provisions of our statutes, but it does appear in the statement of the case by the writer of the opinion that complainant asked ''no relief except such as he may be entitled to by reason of the acts or omissions of the city with respect to the assessments levied to pay for the improvements for which the bonds in suit were issued.'' It also appears that the suit was brought for an accounting with respect to the fund in question, and for a decree against the city for the amount of the statement of the funds collected by it applicable to the payment of appellant's bonds, and for the amounts which had been expended by the city, etc.

*Thomas v. Patterson,* 61 Colo. 547, 159 Pac. 34, also relied upon by appellant, was a suit to compel the county treasurer, as *ex-officio* treasurer of an irrigation district, to pay certain interest coupons clipped from the first issue of bonds of the district. The prin-

cipal statutory provision there in question was as follows: " '. . . . Provided, also, the lien for taxes, for the payment of the interest and principal of any bond issue, shall be a prior lien to that of any subsequent bond issue.' "

The court, three of the judges concurring and two dissenting, held that

"The only logical conclusion supported by the weight of authority, is, that when the coupons are presented for payment and there are not sufficient funds in the hands of the treasurer which can be applied to the payment of all the coupons of the bond issue from which they were taken to pay them in full, that such proportion of such funds may be applied on the coupons presented as are payable out of the funds in the hands of the treasurer in the ratio they bear to the sum total of the coupons to which such funds must be applied."

To the same effect also is *Norris v. Montezuma Valley Irrigation District,* 248 Fed. 369, which also arose out of special assessments of an irrigation district in Colorado. *Thomas v. Patterson, supra,* was followed. The statutes were set out quite at length in the opinion in that case, and they contain no such definite limitations and restrictions as our statutes and the ordinances of Everett relating to bonds for special improvement districts contain. From all that appears, there is no requirement that the bonds be numbered and paid serially. In that case Judge Amidon filed a dissenting opinion, in which, among other things, he said:

"The bonds are what is known in the commercial world as improvement bonds. They bear an exceptionally high rate of interest. They are, like ordinary municipal warrants, issued solely for the purpose of anticipating the collection of the special assessment. Under the statute they are payable out of a fund to arise from the collection of the special assessment,

and do not create a general liability upon the lands embraced in the project to be paid by ordinary tax levies. Such improvement bonds have been issued by municipalities in the coast and mountain states for hundreds of millions of dollars. Their character is well understood in the commercial world. It is well known that such bonds are payable solely out of a fund arising from the special assessment. They bear a high rate of interest, and are frequently sold at a discount because they are not what is known in the business world as municipal bonds. Parties purchasing such securities investigate the project lying behind them as carefully as a good loan agent investigates properties upon which he is taking a mortgage. The price paid, as well as the rate of interest, expresses the hazard which the purchaser of these improvements bonds takes. To treat them as municipal obligations, as the majority opinion does, is, in my judgment, a complete departure from the view of the business world which deals in such securities.''

2 Dillon, Municipal Corporations (5th ed.), § 893, is also quoted and relied upon by appellant, which reads:

''None of the bond-holders has any right of priority in the fund derived from the assessments. This is a trust fund pledged to the payment of all of the bonds and the right of the holder of part of the bonds is only such portion of the fund realized as the sum of his bonds bears to the entire amount of the issue of bonds.''

The only authority cited by appellant to sustain the above statement is that of *Jewell v. Superior, supra,* heretofore noticed.

5 McQuillin, Municipal Corporations, § 2344, is also quoted as follows:

''If there are not sufficient funds to pay the bonds, all the holders should share *pro rata.*''

An examination of the text of McQuillin shows that he was discussing at the time municipal bonds, which, as he states, often provide for the extinction thereof

by a special sinking fund. The bonds in the case at bar are not municipal bonds, either special or otherwise.

Appellant also cites and relies upon cases dealing with private loans where the security is insufficient for two mortgage notes having different maturities, but secured by the same mortgage and assigned to different persons, such as *First National Bank of Aberdeen v. Andrews,* 7 Wash. 761, 34 Pac. 913, 38 Am. St. 885; *Wilson v. Eigenbrodt,* 30 Minn. 4, 13 N. W. 907, which we do not consider have any application to the question before us.

Although appellant and counsel *amici curiae* supporting him construe the statute otherwise, and say that the provisos contained in § 9407, *supra,* only control the calling of bonds serially before maturity, we cannot agree therewith.

In our opinion, the section in question plainly and intentionally contemplates that the bonds shall be issued and numbered serially and paid in serial order. The first proviso in the section is that "such bonds shall be called and paid in their numerical order," that is, where sufficient funds are in the hands of the treasurer from the special assessment for the local improvement to pay the principal of only a part of the bonds. The second proviso is that "such call shall be made by publication in the city or town official newspaper in its first publication following the delinquency of the installment of the assessment, or as soon thereafter as practicable, and shall state that bonds No............ (giving the serial number of bond or bonds called) will be paid on the day the next interest coupons on said bonds shall become due, and interest on said bonds shall cease upon such date." This proviso manifestly directs a call to be made, in what way the call shall be made for the presentation of bonds,

and plainly shows that it refers back to bonds to be called and paid in their numerical order, and that interest on such bonds shall cease upon the day when they are presented for payment on the next interest-paying date.

We do not consider it necessary to enter into a discussion of refined statutory rules of construction to construe the foregoing provisions of the section in question. To our minds, they are plain, unambiguous, and furnish the only rule that can be followed in reference to such bonds.

Moreover, such a bond is in itself a contract between its holder and the city, and both parties are bound by its terms unless such terms are beyond the authority of the city to make. We have heretofore, in a number of cases not necessary to cite, upheld the authority of the city to make and issue such bonds. Appellant purchased the bonds of a higher serial number, with the notice on them plainly staring him in the face that it would not be paid except after the payment of bonds of a lower number. In such case, and under our peculiar statute, with which we have found none anywhere identical, the reasoning of Judge Amidon in his dissenting opinion, *supra,* applies with peculiar force and need not be repeated here. At any rate, there is no reason to resort to the doctrine of trust, because the statute and ordinances control in this case.

The judgment is affirmed.

TOLMAN, C. J., MACKINTOSH, FULLERTON, and MITCHELL, JJ., concur.

ON REHEARING.
[*En Banc.* July 27, 1925.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the opinion heretofore filed herein. The judgment is therefore affirmed.