STATE OF MISSOURI at the relation of WYLLYS K. BLISS, SAM KOEWING and W. L. HAGER, Relators, v. GRAND RIVER DRAINAGE DISTRICT OF LIVINGSTON AND LINN COUNTIES, ET AL.—49 S. W. (2d) 121.

Court en Banc, May 3, 1932.

*Jourdan & English* for relators.

*Roger S. Miller* and *Scott J. Miller* for respondents.

*Bryan, Williams, Cave & McPheeters, amicus curiae.*

*Oliver & Oliver, amicus curiae.*

RAGLAND, J.—This case comes to the writer on reassignment. It is an original proceeding in mandamus; the relators, claiming to be the holders of certain bonds issued by the respondent Grand River Drainage District, seek to compel their payment out of a fund alleged to have been collected and set apart for that purpose.

The alternative writ, incorporating the petition therefor, after alleging that the respondent, Grand River Drainage District of Livingston and Linn Counties, Missouri, was duly incorporated as a drainage district under and by virtue of what is now Article I, Chap-

ter 64, Revised Statutes 1929, by the Circuit Court of Livingston County, on December 27, 1921, and that the individual respondents are the officers and members of the board of supervisors of said district, proceeds as follows:

"Relators further state that after the incorporation of the respondent Drainage District the Board of Supervisors thereof proceeded, as provided in said act, to carry out the organization of said district and that after the creation of defendant District a plan for drainage and a plan for reclamation was duly formulated and duly confirmed by the Circuit Court of Livingston County, as provided in the statutes aforesaid; that in accordance with provisions of said statutes commissioners were duly appointed and duly made a report to the said Circuit Court of Livingston County, Missouri, and duly assessed and reported the assessment of benefits and duly awarded and assessed the award of damages to and against the several tracts of land and other property in said Drainage District for the payment of the cost of the drainage and reclamation works and improvements, as set out in the plans adopted as aforesaid and as required by said statutes, and that all of said acts of said Board of Supervisors and Commissioners were duly approved and confirmed by the judgment and decree of the Circuit Court of Livingston County, Missouri, wherein a majority of the lands in said district were situated; that said judgment and decree was duly rendered after due notice was given, as required by said statutes; that the amount of the assessment of benefits against the several tracts of land and other property in said district so adjudged and confirmed by said court was in the total sum of $1,338,408.50, all of which said sum was thereby made available and is available to pay the cost of carrying out and executing the plan of reclamation and drainage duly designed by the chief engineer for said district and duly approved by the Board of Supervisors thereof, and duly approved and confirmed by the said Circuit Court of Livingston County, Missouri.

"Relators further state that the Clerk of the said Circuit Court of Livingston County, Missouri, and the supervisors and the secretary of said Drainage District and the proper officers of said Drainage District and of the Counties of Livingston and Linn did report, file for record, and record the list of lands and other properties located within the boundaries of said district, together with the assessed benefits thereon, and the decree and judgment of said Circuit Court, in the proper public offices, as provided by said statutes; that the Board of Supervisors of said district thereafter found and determined that it was advisable to issue bonds of said district in order to execute the plan of reclamation as theretofore adopted and to pay the incidental costs and expenses of said district, and the said Board of Supervisors did thereafter issue and cause to be issued

bonds in the face amount of five hundred eighty-two thousand dollars ($582,000), bearing interest at the rate of five and one-half per cent (5½%) per annum, payable semi-annually on the first days of March and September in each year; all of which said bonds were dated March 1, 1922. (Here the form of the bonds is set forth, together with the numbers, dates, denominations and maturities of the bonds issued, from which it appears that they matured in series, on the first day of March of each year, beginning in 1927 and ending in 1942, and that the semi-annual interest on each of said bonds, as evidenced by coupons, fell due on the first day of September and the first day of March in each year until its maturity.)

"Relators further state that thereafter and in connection with the issuance of said bonds the then acting Board of Supervisors of said district duly levied and assessed taxes against the lands and other property in said district in an amount more than sufficient to pay the principal and interest of said bonds as they severally became due and matured, and are to become due and are to mature in the future, and that the proper officers of said district and of said Livingston and Linn Counties are now engaged in collecting said taxes levied and assessed as aforesaid.

"Relators further aver that they are the owners and holders of coupons and bonds of said Drainage District, a part of the issue of bonds hereinbefore described, which said coupons and bonds are in the form hereinbefore set forth, each of which is duly executed and attested by the proper officers of said Board of Supervisors of said Grand River Drainage District of Livingston and Linn Counties Missouri, and the coupons and bonds so owned and held by relators are in amounts numbered as follows: (Here follows a statement in detail as to the numbers of the several bonds and coupons and their respective amounts.)

"The total amount of said coupons and bonds hereinbefore mentioned as being owned and held by relators is recapitulated as follows:

| | |
|---|---:|
| 36 coupons, No. 15, due Sept. 1, 1929, at $13.75 each ....$ | 495.00 |
| 240 coupons, No. 15, due Sept. 1, 1929, at $27.50 each .... | 6,600.00 |
| 14 bonds, due March 1, 1930, at $500 each ........... | 7,000.00 |
| 14 interest coupons, No. 16, due March 1, 1930, attached to said $500 bonds, at $13.75 each ................. | 192.00 |
| 5 bonds, due March 1, 1930, at $1,000 ................. | 5,000.00 |
| 5 interest coupons, No. 16, due March 1, 1930, attached to said $1,000 bonds, at $27.50 each ................. | 137.50 |

$19,425.00

"Relators further state that all of said coupons and bonds held by them as aforesaid are past due and unpaid, and payment thereof has been demanded of respondents; that heretofore relators demanded

of said Drainage District and of the respondents that respondents issue or cause to be issued to relators warrants drawn against the separate fund theretofore established for the purpose of paying the interest and principal of said bonds; and relators demanded that said warrants be issued in substantially the forms provided in section 10767, Revised Statutes of Missouri for the year 1929, for the payment of said coupons and bonds in the amount of nineteen thousand four hundred twenty-five dollars ($19,425), and relators demanded that said warrants be made payable to relators and be delivered to relators forthwith, and that respondents cause the funds at present in the interest and sinking fund of said district to be so placed and disposed of that the said funds may be and shall be paid over to relators as the owners and holders of said coupons and bonds, and relators demanded the doing of all the acts the performance of which they hereby seek to compel.

"Relators further allege that respondents have in their custody and control funds belonging to said drainage district collected from the taxes aforesaid sufficient in amount to pay all the coupons and bonds of relators hereinbefore described; that said funds have been set apart and appropriated in a separate fund duly established by said district, as provided by statute, for the purpose of paying the interest and principal of bonds issued as aforesaid; that respondents have refused and still refuse to pay said funds, or any part thereof, to relators, or to issue the proper warrants for the payment thereof, to relators, or to do any of the acts which relators hereby seek to compel. . .. .

"Relators further state that American Trust Company, the trust company designated in said bonds and coupons as the trust company's office where said bonds and coupons were to be paid, as provided in Section 10788, Revised Statutes of Missouri for the year 1929, was, subsequent to the date of the issue of said bonds and coupons, consolidated with other banks and trust companies and its affairs reorganized, and that the successor to said trust company, and the paying agent duly designated as such by said district, is the respondent Franklin-American Trust Company, a corporation, and it is the duty of said Franklin-American Trust Company to receive and pay over said funds to relators to the extent of the coupons and bonds so held by relators."

The command of the alternative writ was as follows:

"Now, therefore, we being willing that due and speedy justice be done the said relators, in this behalf, command you, and each of you, without further delay or excuse, immediately after the receipt of this writ to forthwith issue or cause to be issued warrants drawn against the interest and sinking fund of Grand River Drainage District of Livingston and Linn Counties, Missouri, said warrants to be,

in substantially the forms provided in Section 10767, Revised Statutes of Missouri for the year 1929, for the payment of the coupons and bonds belonging to the relators as described and set forth in the petition for a writ herein, in the amount of Nineteen Thousand, Four Hundred Twenty-five Dollars ($19,425); and that said warrants be made payable to and delivered to relators, and that you cause moneys present in the separate fund established and existing for the payment of interest and principal of said bonds to be so placed and disposed of that the said amount may be and shall be forthwith paid relators, or that you show cause, if any you have, before the Supreme Court, en banc, on or before the 7th day of May, 1931, why you should not do so.''

The following excerpts from the return fully set forth the grounds upon which respondents refuse payment of the bonds and coupons held by relators:

''Deny that the relators are the owners of the bonds and coupons claimed to be owned by them in their petition for the writ of mandamus. And state that in addition to the bonds and coupons claimed to be owned by the relators which are past due and unpaid, there are other bonds and coupons outstanding which are past due and unpaid, and which said past due bonds and coupons are owned by persons other than the relators, but said owners are unknown to these respondents. . . .

''That by this mandamus proceeding the relators claim the right to select the said $19,425 as above set forth and collect in full therefor, leaving an amount of $93,345 of bonds due and interest due that should, in justice and equity, share equally and in proportion with the amount claimed to be owned by the relators.

''And the respondents, the Board of Supervisors, state there is now in its hands, duly collected and set aside in this fund to the date of April 1, 1931, the total and full sum of $25,988.33.

''Respondents further state that the Board of Supervisors of said Drainage District, at all times and during the years, levied assessments against the landowners and the land included in said district, in an amount sufficient to pay all said bonds and coupons becoming due each year, and did appropriate a sufficient amount of the assessments levied for said years to pay the principal and interest of the bonds becoming due in those years. And that in neither of the years (1929 and 1930) was a sufficient amount collected to pay all the bonds and coupons becoming due in said years.

''. . . and that if the amount collected in each of said years is not sufficient to pay all the principal and interest becoming due in said years, the relators are not entitled to be paid in full, and are not entitled to be paid from said fund so appropriated, only an amount proportioned to the whole amount of bonds and coupons becoming due in said years. . . .

"And respondents state as above set forth in its answer to the alternative writ of mandamus that they have not sufficient money to pay all said obligations in full, and therefore have retained the fund in the hands of the treasurer of said district, and now bring said fund into the court and pray that this court may direct the payment of said fund."

The only allegation of the alternative writ traversed by the return is the averment that relators are the owners and holders of the coupons and bonds, the payment of which they seek to compel. All other allegations of the writ therefore stand admitted. [State ex rel. v. Riley, 219 Mo. 667, 690, 118 S. W. 647.] Touching the ownership of the coupons and bonds in question, Grover C. Jones, Esquire, of the Carroll County Bar, appointed special commissioner to hear the evidence and make findings of fact, found the issues in favor of relators. His finding is not challenged, and so that issue drops out of the case. Relators' ownership, in effect, stands conceded.

 Under the analysis just made of the pleadings, relators have a clear and undoubted right to have their coupons and bonds paid in full out of the fund in the hands of respondents, unless past due and unpaid coupons and bonds of unknown owners "should, in justice and equity, share equally in proportion with the amount claimed to be owned by the relators." If relators are entitled to only such proportion of the fund as the amount of their coupons and bonds bears to the whole amount of all past due and unpaid coupons and bonds they must fail in this action. The court could not in this proceeding make such an apportionment: relators are entitled to the specific relief they seek, or none at all. [State ex rel. v. Nerry, 105 Mo. App. 458, 79 S. W. 993.]

 If the respondent Drainage District were a private corporation, with definite ascertainable assets, and those assets insufficient when liquidated to meet its obligations to creditors, principles of equitable adjustment could properly be invoked. But the District is a municipal corporation; its general assets, if any, are not liable for its bonded indebtedness; such indebtedness is payable solely from a special fund to be derived from the taxation of the lands lying within its boundaries. The Statute which authorized the issuance of the bonds in question provides:

"The board of supervisors may, if in their judgment it seems best, issue bonds not to exceed ninety per cent of the total amount of the taxes levied under the provisions of section 10759 (R. S. 1929). . . . All of said bonds shall be executed and delivered to the treasurer of said district, who shall sell the same in such quantities and at such dates as the board of supervisors may deem necessary to meet the payments for the works and improvements in the district. Said bonds . . . shall show on their face the purpose for

which they are issued, and shall be payable out of money derived from the aforesaid taxes. A sufficient amount of the drainage tax shall be appropriated by the board of supervisors for the purpose of paying the principal and interest of the said bonds and the same shall, when collected, be preserved in a separate fund for that purpose and no other. All bonds and coupons not paid at maturity shall bear interest at the rate of six per centum per annum from maturity until paid or until sufficient funds have been deposited at the place of payment and the said interest shall be appropriated by the board of supervisors out of the penalties and interest collected on delinquent taxes or any other available funds of the district. . . . It shall be the duty of said board of supervisors in making the annual tax levy, as heretofore provided (Sec. 10760, R. S. 1929), to take into account the maturing bonds and interest on all bonds, and to make ample provisions in advance for the payment thereof. In case the proceeds of the original tax levy made under the provisions of section 10759 of this article are not sufficient to pay the principal and interest of all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose, and under no circumstances shall any tax levy be made that will in any manner or to any extent impair the security of said bonds or the fund available for the payment of the principal and interest of the same. . . . The said treasurer shall promptly report all sales of bonds to the board of supervisors, which board shall, at reasonable times thereafter, prepare and issue warrants in substantially the forms provided in section 10767 of this article for the payment of the maturing bonds so sold and the interest payments coming due on all bonds sold. . . .'' [Sec. 10788, R. S. 1929.]

This statute clearly contemplates that the taxing power with which a drainage district is vested shall be so exercised as to make provision for the payment in full of all bonds which it authorizes. It does not appear from the record here that the power with which respondent Drainage District is armed to assess, levy and collect taxes for the purpose of paying its bonds and the interest thereon has been exhausted, nor that the future exercise of that power will not be fruitful in obtaining the necessary funds. On the contrary, it is admitted ''that the proper officers of said district and of said Livingston and Linn Counties are now engaged in collecting said taxes levied and assessed as aforesaid.'' In these circumstances the equitable doctrine of equality as applied in the apportionment among creditors of the funds and assets of an insolvent debtor is without application.

It is also within the contemplation of the statute (Art. I, Chap. 64, R. S. 1929), as shown by various and sundry of its provisions, that taxes levied by a drainage district may become delinquent and that because of such delinquency bonds issued by it may not be

paid at their maturity. Yet, the statute is wholly silent as to preferences or priorities as between the holders of matured bonds, when the funds at a given time are not sufficient to pay all. Nor does it contain a requirement, or even an intimation, that none of such bondholders shall be paid until funds are available to pay all. On the contrary, by the clearest implications it places upon the board of supervisors the imperative duty to pay matured and maturing bonds and interest installments as long and as often as funds are available for that purpose.

A peremptory writ is awarded. All concur, except *Atwood, C. J.*, who dissents.