State of Missouri at the Relation of Sturdivant Bank, a Corporation, v. The Little River Drainage District, a Corporation, et al., Appellants.—68 S. W. (2d) 671.

Court en Banc, February 3, 1934.

754

*Oliver & Oliver* for appellants.

*J. Grant Frye, Rush H. Limbaugh* and *Dearmont, Spradling & Dalton* for respondents.

*Von Mayes* for County Treasurer of Pemiscot County, *amicus curiae.*

*T. M. Pierce* and *S. Mayner Wallace* for Richard T. Shelton, *amici curiae.*

*Charles Claflin Allen, Jr.,* for Bondholders' Protective Committee, *amicus curiae.*

ELLISON, J.—By this mandamus proceeding, which originated in the Circuit Court of Cape Girardeau County in April, 1932, the relator bank seeks to compel the respondent drainage district through its officers to pay six of its matured drainage bonds, and ninety-three interest coupons from these and other like bonds. The aggregate amount due thereon at the institution of the action was $8516.15. The due date of two of the coupons, calling for $27.50, was October

1, 1929. All the rest of the coupons and all of the bonds were of later maturity.

The bonds and coupons are owned and held by the relator bank. The respondent drainage district has in its treasury $87,923.41, more than enough to pay them; but for return to the alternative writ of mandamus it pleads its insolvency and that the relator is entitled only to share *pro rata* with the holders of its other outstanding bonds and coupons (whether due or not) in the funds on hand and such as may be raised by future special tax levies. The relator demurred to the return and the circuit court sustained the demurrer. The respondent district thereupon refused to plead further, and appeals to this court from the judgment of the circuit court making the alternative writ of mandamus peremptory. In this state of the case facts well pleaded in the return stand admitted, and the issues presented for decision are issues of law.

The following facts are shown by the return. The drainage district was incorporated in November, 1907, under Laws of Missouri, 1905, page 190, providing for the organization of drainage districts by circuit courts, and has since existed by virtue of said law and subsequent reenactments and amendments thereof, now embodied in Article I, Chapter 64, Revised Statutes 1929. The total principal of the outstanding bond issues of the district is $8,045,000, of which $1,168,500 and $685,265 in interest, were in default when this proceeding was begun, making a total past due indebtedness of $1,853,765, representing all bonds and interest maturing on and since October 1, 1929. Of these total bond issues $7,132,500 in bonds are in the hands of two bondholders' committees, which are working amicably with the respondent district. The relator has not deposited its bonds with these committees.

The total assessed benefits within the district aggregate $14,158,260. It is alleged that it would be necessary to levy and collect taxes amounting to 99.73 per cent of the benefits assessed against the original or main part of the present district to retire the principal of the bonded indebtedness charged there against, and 79.5 per cent of said benefits for the interest thereon, making a total of 179.32 per cent of said benefits; and that it would be necessary to levy taxes amounting to 87 per cent of the benefits assessed against the land in a subsequently added part of the district to pay the principal of the bonded indebtedness charged there against, and 68 per cent of said benefits to pay the interest thereon, making a total of 155 per cent of said benefits. Drainage taxes for the whole district in the amount of $1,479,477.02 were delinquent on August 31, 1931, and such delinquencies (it is alleged) will increase as subsequent tax installments successively become due.

The reasons assigned for this are that the economic depression has

greatly decreased the money value of the land in the district and the products thereof; droughts and floods have destroyed such crops as there were; the State and other senior taxing agencies in many instances have foreclosed their prior liens for taxes; the inordinate burden of taxation for state, county, school and road purposes, and for the respondent drainage district and other smaller districts comprehended within it, has caused landowners to abandon their lands; much of the productive land has been taken over by the district for retention basis and other drainage works, thus withdrawing it from production and taxation; all with the result that only twenty-four per cent of the total area of the district is fully improved and only thirty-two per cent partially so. These facts and many others are alleged in the respondent's return, which concludes with the assertion that the reserve in the benefit assessment available for the payment of taxes, and the amount that can be collected from delinquent taxes, are insufficient to pay the bonded indebtedness of the drainage district, and that it is hopelessly insolvent and will continue to be so. The relator's demurrer admitted these facts, and for the purposes of the case it concedes in its brief filed in this court "that Respondent District is insolvent and will not be able to fully meet its obligations as may accrue for an indefinite period of years, if at all."

I. It is well established that mandamus is a proper remedy to compel a drainage district to pay a claimant who has an immediate right to money actually in its treasury, State ex rel. Nolen v. Nelson, 310 Mo. 526, 275 S. W. 927. It has been so ruled with reference to past-due bonds and interest coupons of a drainage district, State ex rel. Bliss v. Grand River Drainage District, 330 Mo. 360, 49 S. W. (2d) 121. Indeed, Sec. 10885, Revised Statutes 1929, broadly provides "the performance of all duties prescribed in any existing, or future law of this State governing the organization and administration of drainage or levee districts may be enforced by *mandamus* at the instance of any person or corporation interested in any way in any such district." The main question in this case is whether, in view of respondent's insolvency, the payment in full of its bonds and coupons held by relator is a duty prescribed by law, within the meaning of the above section.

The relator contends the respondent district is legally bound to pay the bonds and coupons because of the provisions of Article I, Chapter 64, Revised Statutes 1929 under which the district was incorporated, and particularly Section 10788, thereof. Previous sections of the article provide for the adoption of a plan for reclamation by the district (which shall include an estimate of the cost of the improvement) and for an assessment of the benefits accruing to the several tracts of land therein from the construction of the drainage

project. Complaining landowners are entitled to a court review of their assessments. Under Sections 10757 and 10781, if the estimated cost of construction exceeds the total assessed benefits allowed by the court the improvement cannot be made and the district must be dissolved. The act does not provide for new or supplemental benefit assessments thereafter except, on certain conditions, under Section 10790 for maintenance purposes; or where, because of a change in boundaries or for other reasons the plan for reclamation is changed. [See Secs. 10784, 10786, 10793.] In other words the mere fact that the total benefit assessment proves inadequate to finance the cost of construction or to pay bonds issued for that purpose, will not authorize an increase in the assessment.

Section 10759 requires a total or aggregate tax to be levied on all the land in the district, without unnecessary delay, of such portion of said assessed benefits as the board of supervisors shall find necessary to pay the cost of constructing the proposed drainage works and improvements, plus ten per cent for emergencies. [See Elsberry Drainage Dist. v. Winkelmeyer, 278 Mo. 268, 275, 212 S. W. 893, 895.] This tax is apportioned to the various tracts of land in the district according to the benefits charged to each, and cannot exceed the assessed benefits. Section 10760 directs that the board of supervisors "shall each year thereafter determine, order and levy the amount of the annual installment of the total taxes levied under the preceding section." Under Section 10793, if the initial total tax levy made pursuant to Section 10759 is found to be insufficient to pay the cost of constructing the drainage improvement contemplated by the plan for reclamation, additional levies may be made for that purpose, *"provided,* the total of all levies of such tax does not exceed the total amount of benefits assessed."

Section 10788, the section specially relied on by the relator, provides for the issuance of the bonds mentioned in Section 10759, in an amount not exceeding 90 per cent of the total tax levy. After detained provisions relating to the denomination, rate of interest, maturity, execution and sale of the bonds the section further provides (for convenient reading we have divided it into paragraphs and have italicized the parts stressed by the relator and respondent) :

*"A sufficient amount of the drainage tax shall be appropriated by the board of supervisors for the purpose of paying the principal and interest of the said bonds and the same shall, when collected, be preserved in a separate fund for that purpose and no other.* All bonds and coupons not paid at maturity shall bear interest at the rate of six per centum per annum from maturity until paid, or until sufficient funds have been deposited at the place of payment and the said interest shall be appropriated by the board of supervisors out

of the penalties and interest collected on delinquent taxes or any other available funds of the district. . . .

"It shall be the duty of said board· of supervisors in making the annual tax levy, as heretofore provided, to take into account the maturing bonds and interest on all bonds, and to make ample provisions in advance for the payment thereof. In case the proceeds of the original tax levy made under the provisions of Section 10759 of this article are not sufficient to pay the principal and interest of all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose, and under no circumstances shall any tax levies be made that will in any manner or to any extent impair the security of said bonds or the fund available for the payment of the principal and interest of the same. . . .

"The said treasurer shall promptly report all sales of bonds to the board of supervisors, which board shall, at reasonable times thereafter, prepare and issue warrants in substantially the forms provided in Section 10767 of this article *for the payment of the maturing bonds so sold and the interest payments coming due on all bonds sold*. Each of said warrants shall specify what bonds and accruing interest it is to pay, *and the said treasurer shall place sufficient funds at the place of payment to pay the maturing bonds and coupons when due* as well as a reasonable compensation to the bank or trust company for paying same. . . ."

The respondent points to the italicised language in the first paragraph of the section as quoted above, requiring the board of supervisors to appropriate "a sufficient amount of the drainage tax . . . for the purpose of paying the principal and interest of the said bonds" and further directing that "the same shall, when collected, be preserved in a separate fund for that purpose and no other." It is respondent's contention that this makes collected· tax money appropriated for the payment of bonds and interest a trust fund for the benefit of *all the bonds sold,* and that when a drainage district becomes insolvent no bonds or coupons (whether due or not) should receive more than their *pro rata* share of the fund on hand and increments thereto from future tax levies. On the other hand, the relator emphasizes that part of the third quoted paragraph of the section requiring the board of supervisors at reasonable times to issue warrants "for the payment of the maturing bonds so sold and the interest payments coming due on all bonds sold;" and further directing the treasurer of the drainage district to "place sufficient funds at the place of payment to pay maturing bonds and coupons when due." Relator asserts this constitutes an unconditional direction to pay in full bonds and interest coupons as they mature, notwithstanding the district may be insolvent; and further argues that when the

funds on hand are insufficient to pay all matured bonds and coupons the money should be applied as far as it will go to the satisfaction of such of said bonds and coupons as are presented for payment, though the fund be thereby exhausted to the prejudice of the other matured bonds and coupons.

We are unable to adopt the relator's construction of Section 10788, or its theory of the law applicable to this case under Article 1, Chapter 64, Revised Statutes 1929, viewed as a whole, for the following reasons.

First, while districts organized under the article may issue bonds to finance the construction of drainage improvements, the bonds are not the general obligations of the district. It has no authority to levy a general property tax and no inexhaustible power to tax. The bonds are payable solely out of special taxes levied against benefit assessments initially charged on the various tracts of land in the district, and as to each tract the tax cannot exceed the benefit assessment standing thereagainst. If the tax returns within these limits are and will be insufficient to pay all bonds and interest in full the district is in legal effect insolvent.

Second, though the limitations imposed by the article on the taxing power of the district are such as may reduce it to a state of insolvency, nevertheless the statute makes no provision for preference or priority between bonds or bondholders, but, on the contrary, pledges the taxes collected to the payment of *all* the bonds sold, with interest. As respondent points out, Section 10788 requires that ''a sufficient amount of the drainage tax shall be appropriated by the board of supervisors for the purpose of paying the principal and interest of the said bonds.'' The words ''said bonds'' here used obviously mean the bonds *sold*. The whole preceding part of the section is directed to the issuance and sale of the bonds. And the words ''drainage tax'' refer to the total tax levy made in the early stages of organization under Section 10759. In other words an appropriation to pay all bonds and interest is to be made *in advance*, out of the whole tax levy, just as Section 12, Article X of the State Constitution requires that before or at the time of incurring a municipal indebtedness thereunder, provision shall be made for the collection of an annual tax sufficient to pay the same. This is further made manifest by the clause next following in the section (10788) that ''the same'' (meaning the amount of tax appropriated) ''shall, *when collected*, be *preserved* in a separate fund for that purpose and no other.'' From these provisions the conclusion necessarily follows that collected tax money appropriated for the payment of bonds and interest constitutes at all times and from time to time, a trust fund for the benefit of all bonds sold, and the officers of the district having charge thereof are statutory trustees.

■ But, thirdly, notwithstanding collected taxes appropriated for the payment of bonds and interest are made a trust fund for the benefit of *all* the bonds, yet the article clearly contemplates that as bonds and interest coupons mature they shall be paid in full out of the money on hand. Section 10760 permits the board of supervisors to levy annual installments of the total tax in such amounts as they shall from year to year determine; and Section 10788 requires them in fixing the amounts of the annual levies to take into account the maturing bonds and interest on all bonds and to make ample provision in advance for the payment thereof. This statute further provides bonds and coupons not paid at maturity shall thence bear interest at the rate of 6 per cent per annum; and toward the close, as relator emphasizes, it says the treasurer shall promptly report all sales of bonds to the board of supervisors; that the supervisors "*shall,* at reasonable times thereafter, prepare and issue warrants . . . for the payment of the maturing bonds so sold and the interest payments coming due on all bonds sold;" and that the treasurer "shall place sufficient funds at the place of payment to pay the maturing bonds and coupons. . . ."

However, the section also provides that "in case the proceeds of the original tax levy made under the provisions of Section 10759 . . . are not sufficient to pay the principal and interest of all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose," and then adds that "under no circumstances shall any tax levies be made that will in any manner or to any extent impair the security of said bonds or the fund available for the payment of the principal and interest of the same." Let it be noted the quoted language says the additional levies are to be made "upon" (and therefore *within*) the benefit assessment, to pay the principal and interest of *all bonds issued;* and that under no circumstances shall any tax levies be made that will impair the security of "said bonds" or the fund available for the payment of the principal and interest of "the same." The words "said bonds" and "the same" mean and refer back to "all bonds issued."

Considering together the three groups of provisions reviewed in the preceding paragraphs, we are clearly of the opinion that performance of the requirements of Section 10788 with reference to the payment in full of bonds and coupons as they mature is contingent on whether the drainage district is solvent—or, in other words, on whether there are and will be, so far as appears, sufficient tax revenues to pay all bonds and coupons in full. The section *assumes* the solvency of the district and on that basis provides for disbursements from time to time out of the bond fund to pay matured bonds and interest; and the fund is replenished by successive subsequent tax installments

paid in. To that extent matured and next maturing bonds and interest have a prior claim on the fund at any given time. But that does not mean the fund is not held in trust for the benefit of all the bonds. The matured bonds are entitled to be paid in full *because* those of later maturity in their turn will be. The situation is somewhat analogous to that considered in McGhee v. Walsh, 249 Mo. 266, 287, 155 S. W. 445, 450, where it was held that land in a sewer district could be charged with benefits and specially taxed for the construction of a sewer which did not and physically could not serve it, because when other sewers which would serve the land involved were later built the other land in the district would be similarly taxed. The decision calls it a "vested right to reciprocal contribution."

The very reasons which require the payment in full of bonds and coupons of the drainage district as they come due so long as the district is solvent, would require that they be paid only ratably if the district becomes insolvent. By no other means can all the provisions of the article be harmonized and the parity of claim of all the bonds enforced. The statutes, as we have said, impose limits on the taxing power of a district, which in supposable conditions would reduce it to insolvency. And yet Section 10788 makes these taxes "when collected" a trust fund for the payment of all the bonds and interest. The section further forbids any tax levies which will impair the security of the bonds issued or the fund available for the payment thereof. As this provision protects all the bonds issued, in case of insolvency it would prohibit the levy of taxes to pay matured bonds and interest in full since such payments would necessarily impair the security of at least some of the bonds left unpaid. The burden of proving a condition of insolvency would be on the party alleging it, no doubt, but in the present case we have the fact admitted.

■ This view conforms to and applies the equitable maxim that equality is equity. Relator contends this maxim yields to the maxims that equity follows the law and that equity aids the vigilant. It has also been held to yield to the maxim that where equities are equal the first in order of time must prevail. [21 C. J., sec. 207, p. 206.] But in this instance the law which equity would follow is the statute, and the statute, as stated, expressly pledges the whole amount of tax collections appropriated to the payment of bonds and interest, for the equal benefit of all bonds sold. If there had been a contrary intention it surely would have been expressed in the statute since the bonds authorized thereby are serial bonds bearing semi-annual interest and coming due at annual intervals within twenty years, commencing after a period of not more than five years. It is not to be thought the Legislature meant the earlier maturing bonds should occupy a position superior to all the rest in case of insolvency, thereby prej-

udicing the sale of the latter, or that even as between the matured bonds and coupons there should be a scrambling effort and a multiplicity of suits each time enough money comes into the district's treasury to pay *somebody* in full.

We are not holding that if bonds of a drainage district organized under Article I, Chapter 64, Revised Statutes 1929, are paid in full while the district is apparently or prima facie solvent the holders of later maturing bonds would be entitled to contribution after the insolvency of the district is established; or that such junior bondholders would have a cause of action against officers of the district who had acted in good faith; or that such a drainage district cannot *provide* for the priority of one issue of bonds over another. These questions are not involved in this case. The essential point is that the relator here has no clear legal right to enforce by mandamus the payment in full of its bonds and coupons, since the respondent drainage district is admitted to be insolvent and the relator is therefore only entitled to share ratably in the funds on hand and those collected in the future. Furthermore, even if the maxim were applied that where equities are equal the first in point of time must prevail, the relator would be in no better situation. All the bonds and coupons of the respondent district maturing on and since October 1, 1929, are in default. Of these oldest matured obligations the relator holds only two interest coupons calling for $27.50. All the rest of its coupons and all of its bonds are of later maturity, and on that theory would be subject to the superior equities of that part of the $1,168,500 in bonds and $685,265 in coupons now in default which matured on October 1, 1929. The amount of these is not shown by the record.

The relator contends that State ex rel. Bliss v. Grand River Drainage Dist., supra, 330 Mo. l. c. 369, 49 S. W. (2d) l. c. 124, recently decided by this court en banc is in conflict with the views expressed here. While the general facts in that case were similar to those in this, and the circuit court, in granting a peremptory writ of mandamus in this cause, evidently attempted to follow it, we think the decision, on a proper interpretation, is not authority on the essential point involved in the instant case. There was no contention in the Bliss case that the Grand River Drainage District was *insolvent*. This was expressly pointed out in the opinion, which said:

"It does not appear from the record here that the power with which respondent drainage district is armed to assess, levy, and collect taxes for the purpose of paying its bonds and the interest thereon has been exhausted, nor that the future exercise of that power will not be fruitful in obtaining the necessary funds. On the contrary, it is admitted 'that the proper officers of said district and of said Livingston and Linn Counties are now engaged in collecting said taxes levied and assessed as aforesaid.' In these circumstances the equitable

doctrine of equality as applied in the apportionment among creditors of the funds and assets of an insolvent debtor is without application.''

The decision does sustain relator's contention to this extent. Bearing in mind it was dealing with a situation where the drainage district was not claimed to be insolvent, it says the statute contains no requirement, or even intimation, that holders of particular matured bonds shall not be paid in full until funds are available to pay all; and a peremptory writ of mandamus was awarded the relator for the payment of his bonds and coupons in full, though the funds in the treasury of the district were insufficient to pay all matured bonds and interest coupons. We have already held in this opinion that when a drainage district organized under Article 1, Chapter 64, Revised Statutes 1929, is solvent, funds on hand from time to time are primarily pledged to the payment of matured and next maturing bonds and interest. We have further held that in such situation *as between* the several matured and maturing bonds and coupons the funds are a trust fund against which all such bonds and coupons have an equal claim. To that extent there appears to be conflict between the Bliss case and this. But we reserve fuller discussion of that question for the opinion in State ex rel. Drainage District No. 8 v. Duncan, 334 Mo. 733, 68 S. W. (2d) 679.

The conclusion reached in this case finds support in practically all the decisions from other jurisdictions, as we read them. Take first the cases cited by the relator. While several of them rule that the holder of matured bonds or coupons of a drainage or other like district may compel payment thereof in full by mandamus though the funds on hand are insufficient to pay all matured bonds and coupons —just as the Grand River Drainage District case, supra, 330 Mo. 360, 49 S. W. (2d) 121, decides—yet in none of these cases was the district shown to be insolvent. We shall refer to several of the decisions on which relator relies.

In Meyer v. Widber, 126 Cal. 252, 58 Pac. 532, a bondholder proceeded by mandamus to enforce payment in full of certain matured bonds and coupons issued to property owners in payment of damages for the widening of a street. Special assessment taxes (it seems) were levied to raise funds for the retirement of the bonds. The city defended on the ground that the funds on hand were insufficient to pay all matured bonds, and that the holders of other matured bonds and coupons had demanded and been refused payment thereof prior to plaintiff's demand. The Supreme Court of California by a vote of four to three awarded a peremptory writ; but the opinion does not disclose whether the ultimate payment of all issued bonds would be prejudiced by plaintiff's recovery, or consider the effect of the fact that the fund was a trust fund. The case is distinguished by a later California decision to which attention will be called.

Hook v. German-American Bank, 136 N. Y. Supp. 1019, 1023, was an action for an accounting of the entire fund produced by an assessment on property specially benefited by the construction of a sewer, and to require those defendants whose certificates, or bonds, had been paid in full to restore to the fund an equitable proportion thereof for the benefit of the plaintiff and others in like situation, whose bonds had not been so paid. Under the legislative act authorizing the building of the sewer, the sewer commissioners were "empowered to make further assessments from time to time in case the first assessment was found to be insufficient to defray the cost of the work." After part of the bondholders had been fully paid this state law was changed by amendment in such manner as to deprive the sewer commissioners of the power to make supplemental assessments; at least, the plaintiff so contended. The New York court denied the accounting saying that since, at the time the bonds were issued and the payments thereon made, there was "ample power to provide funds by reassessment to supply any deficiency appearing" the rights of those bondholders who had been paid could not be prejudiced by a subsequent change in the law—if it was changed as the plaintiff contended.

State ex rel. Sondheim v. McClain, 132 Ore. 561, 286 Pac. 590, was an original proceeding in mandamus to compel the levy of a tax to pay matured and maturing bonds and interest of an irrigation district. Among other defenses presented by the board of directors it was alleged the amount which would be realized from the sale of land for delinquent taxes during the then current year would be sufficient to satisfy the matured bonds and interest; and that the tax levy sought to be enforced would be oppressive and would detrimentally affect the market price of the district's bonds. The Oregon Supreme Court in a *per curiam* opinion ruled these would be "mere inconveniences" and awarded a peremptory writ, saying a refusal thereof would "ruin the credit" of the district.

Without discussion, it is obvious the foregoing cases do not support relator's contention here that it is entitled to full payment of its $8500 in bonds and coupons though the respondent district is insolvent and defaulting on over $1,800,000 of other similar obligations. The rule is clearly to the contrary, as shown by numerous authorities cited by respondent. Speaking of special assessment bonds issued by municipalities, it is said in 6 McQuillin on Municipal Corporations (2 Ed.), section 2504, page 245: "If there are not sufficient funds to pay the bonds, all the holders should share *pro rata.*" Similarly, another recognized text, 2 Dillon on Municipal Corporations (5 Ed.), section 893, page 1391, notes it has been held that in the collection of assessments for the retirement of special improvement bonds the municipality acts as a statutory trustee, and further declares that:

"None of the bondholders has any right of priority in the fund derived from the assessments. This is a trust fund pledged to the payment of all of the bonds, and the right of the holder of a part of the bonds is only to such portion of the fund realized as the sum of his bonds bears to the entire amount of the issue of bonds."

In Jewell v. City of Superior, 135 Fed. 19, 24, 67 C. C. A. 623, certiorari denied, 198 U. S. 583, 25 Sup. Ct. 801, 49 L. Ed. 1173, the city collected special assessments levied to pay bonds issued for street improvements, and commingled the funds with general tax receipts. An unpaid bondholder sued for an accounting and to compel payment of his bonds in full. The court said:

"This fund, derivable from the assessments, was a trust fund, pledged to the payment of all of the bonds. The right of the appellant therein was only to such portion of the fund realized as the sum of his bonds bore to the entire amount of the issue of bonds. It is true that equity favors the vigilant, not the slothful; but we think it would be a manifest perversion of equity to require a trustee to commit a breach of trust owing to other *cestuis que trustent,* by taking from other bondholders and awarding to the appellant so much of this fund as would pay his bonds in full. We know of no principal of equity which would warrant such a decree."

In Florida and a number of other jurisdictions it is held that where bonds are payable out of a fund which may be replenished as necessary through the exercise of an inexhaustible taxing power, the holder of particular matured bonds may enforce payment thereof in full though the funds at the time be insufficient to satisfy all matured bonds. But the decisions announcing this rule further recognize that if the fund will not retire all bonds and cannot be adequately replenished, it must be disbursed ratably. [Moran v. State (Fla.), 149 So. 477; State ex rel. Gillespie v. Carlton, 103 Fla. 810, 822, 138 So. 612, 618, and numerous cases there cited. See, also, Rothschild v. Village of Caulmet Park, 262 Ill. App. 96, 106.]

In Rohwer v. Gibson, 126 Cal. App. 707, 14 Pac. (2d) 1051, mandamus was sought to enforce payment of coupons for interest due in July, 1932, on bonds of a reclamation district. The defense interposed was that, owing to delinquencies in the payment of the installment of the benefit assessment levied to meet interest of that maturity, the fund on hand was insufficient to pay all such coupons and other holders had demanded payment. The answer further alleged that if the delinquent assessments were paid or foreclosed lands were redeemed, additional funds available for the payment of interest would be forthcoming. The opinion points out that under the law of California reclamation districts can levy taxes only within benefits assessed; and the ruling was that since the realization of sufficient funds to pay all coupons was "uncertain" or "dependent on postponed

events which may never take place,'' mandamus should be awarded only for the payment of such proportion of each coupon as the amount on hand bore to the total matured interest indebtedness. This decision distinguishes Meyer v. Widber, supra (126 Cal. 252, 58 Pac. 532) saying that case overlooked the fact that collected special assessments constitute a trust fund; and also reviews at length the recently published opinion of this court in State ex rel. Bliss v. Grand River Drainage Dist., supra, 330 Mo. 360, 49 S. W. (2d) 121. Speaking of it the California court said: ''The opinion . : . does not indicate that the court had before it or considered any question as to the moneys collected on account of the special improvement assessment being a trust fund to which all bondholders must look for payment, and to payment out of which each bondholder was equally entitled.''

Morris, Mather & Co. v. Port of Astoria, 141 Ore. 251, 15 Pac. (2d) 385, was an original proceeding in mandamus to compel payment of certain interest coupons due in July, 1932, on a series of municipal bonds issued by the Port of Astoria. Under the law the Port had power to levy both a regular annual tax and a special tax. It was, in fact, a mandatory duty to provide sufficient funds for the payment of the bonds and interest coupons as they matured and liberal levies had been made for that purpose, but owing to large delinquencies in the payment of the taxes the fund provided was insufficient to pay all coupons. An intervening bondholder pleaded that the Port had no inexhaustible power to tax, and that if the plaintiff's coupons were paid in full the fund on hand would be reduced to an amount such as would deprive other coupon holders of their proportionate share thereof. This allegation was not denied by the plaintiff. Considering that fact, and taking judicial notice of the economic depression and of a devestating conflagration which had greatly impaired the ability of the Port to collect taxes levied, the Supreme Court of Oregon held that although the Port was authorized to levy a general tax, yet it did not possess ''inexhaustible resources from which it can secure cash,'' and a writ of mandamus was awarded only to pay out the fund ratably.

Likewise Thomas v. Patterson, 61 Colo. 547, 159 Pac. 34; Norris v. Montezuma Valley Irr. Dist., 240 Fed. 825; and Norris v. Montezuma Valley Irr. Dist., 248 Fed. 369, decided that where the funds in the treasury of an irrigation district organized under the law of Colorado were insufficient to pay all of its bond interest coupons maturing in a certain year the funds should be paid out ratably; and there was no contention in these cases that the district was insolvent. In State ex rel. Boyd v. Mills, 133 Wash. 681, 690, 234 Pac. 1042, 1045, and Bates v. McHenry, 123 Cal. App. 81, 10 Pac. (2d) 1038, the ruling was that if the state statute requires the payment of special assessment bonds in a particular order or sequence, they must be so paid

even though the fund on hand be insufficient to meet all matured bonds. But in Meyers v. City of Idaho Falls, 52 Idaho, 81, 95, 11 Pac. (2d) 626, 631, the Supreme Court of Idaho held that where the statute discloses an intention to make funds collected from special assessments a trust fund for the equal benefit of all of a set of bonds the bonds must be paid ratably if the fund will not satisfy all, even though there be a further provision in the statute for their payment in a certain order. The case says that in these circumstances the order of payment clause will be regarded as directory.

■ II. One other point. The relator contends mandamus is a common-law proceeding for the enforcement of legal rights and cannot be converted into a proceeding in equity for the apportionment of the assets of the drainage district among its creditors. And the further kindred suggestion is urged that although third parties cannot intervene in a mandamus proceeding under the law of this State, State ex rel. Gordon v. Burkhardt, 59 Mo. 75, 78, nevertheless the respondent district is in effect introducing third parties (other bondholders) in the instant proceeding by interposing their claims for them. There is no merit in either of these contentions. As is said in State ex rel. Hyde v. Jackson County Medical Society, 295 Mo. 144, 152, 243 S. W. 341, 342, "mandamus, in its exceptional traits, partakes in some respects of the nature of equity." So, also, it is stated in 38 Corpus Juris, section 6, page 543: "But while mandamus is classed as a legal remedy, its issuance is largely controlled by equitable principles." Furthermore, the equitable principles to be followed in this case are not pure equities, independent of the statute. They have been incorporated in Section 10788, and are a part of the law, itself. They measure the relator's own rights against the respondent district, and are not mere affirmative defenses or cross-claims asserted in behalf of other bondholders.

III. In some of the cases cited in the preceding paragraphs, while the court denied a peremptory writ of mandamus enforcing payment of the relator's bond *in full*, as prayed, yet the writ was granted so far as to compel payment of relator's *pro rata* portion of the fund on hand. Should the trial court's action in awarding a peremptory writ of mandamus in this case be affirmed that far? We think not. It is held in State ex rel. Bliss v. Grand River Drainage Dist., 330 Mo. 1. c. 369, 49 S. W. (2d) 1. c. 124, that such apportionments cannot be made in a mandamus proceeding, and that the relator must be granted the specific relief sought or none at all. But whether that be true or not—in view of our construction of the statute—it appears from the return here that the respondent district had offered to pay the relator the ratable amount due on its bonds and coupons, and that the offer was refused. In that situation all relief by mandamus

should be denied. [State ex rel. Stoecker v. Lemay Ferry Sewer Dist., 332 Mo. 965, 61 S. W. (2d) 724, 726.]

The judgment below is accordingly reversed. All concur, except *Hays, J.,* absent.